STEVENS et al. v. MISSOURI, K. & T. RY. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 8, 1901.)

No. 108.

1. PRELIMINARY INJUNCTION—GROUNDS.

The prerequisites to the allowance of a preliminary injunction are that the complainant must generally present a clear title, or one free from reasonable doubt, and set forth acts done or threatened by defendant which will seriously or irreparably injure his rights under such title, unless restrained.

2. SAME—CORPORATIONS—SUIT BY STOCKHOLDERS.

A bill alleged that complainants were minority stockholders, owning less than one-third of the stock of a railroad company which had leased its property to defendant company for a share of the gross earnings, and that under the agreement two-thirds of the stock had also been transferred to the control of defendant; that defendant had failed to credit the lessor with its proper share of the earnings, and to avoid payment of future rentals had devised a scheme for the consolidation of the two companies, which it had caused to be ratified by the holders of two-thirds of the stock of each company, and had issued additional stock, which, under the consolidation agreement, was to be exchanged for the stock of the lessor. It further alleged that the consolidation was ultra vires, and in fraud of complainants' rights, and prayed that its consummation be enjoined, that the provisions of the lease be enforced, and for an accounting in respect to the earnings of the leased property. It appeared that the consolidation had been formally perfected in accordance with the laws of the state in which the companies were incorporated. Held that, conceding the sufficiency of the bill to entitle complainants to relief, the facts shown did not authorize the granting of a preliminary injunction, since the consolidation could only be annulled on the ground that it was ultra vires and void, or voidable, as in fraud of the rights of the minority stockholders, and in either case no action which could be taken by defendant pending the suit could prejudice complainants' rights.

Appeal from the Circuit Court of the United States for the Southern District of New York.

James Hagerman and Simon Sterne, for appellants.
Julian T. Davies, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

PER CURIAM. The order granting a preliminary injunction, which is under review upon this appeal, was founded upon a case which may be concisely stated as follows: The complainants were stockholders, owning less than one-third of the shares of its capital stock, in the Kansas City & Pacific Railroad Company (hereafter called the "Pacific Company"), a corporation incorporated, prior to 1889, under the laws of the state of Kansas. By a lease made in 1890, that corporation demised, for a term of 999 years, all its property, except its franchises, to the Missouri, Kansas & Texas Railroad Company

(hereafter called the "Kansas Company"), another corporation incorporated, prior to 1870, under the laws of the state of Kansas. Among other provisions, the lessee covenanted in the lease to pay the lessor a specified percentage of the gross earnings realized by the operation of the leased property. As one of the conditions of making the lease, the Kansas Company insisted that there should be transferred to it, or to some other person or corporation to be held in its behalf, two-thirds of the capital stock of the Pacific Company, and such condition was agreed to. Since the lease the Kansas Company has practically owned and controlled continuously two-thirds of the capital stock of the Pacific Company, standing in the name of the Southwestern Coal & Improvement Company, a corporation owned by the Kansas Company, and such stock has always been voted upon in the interest and under the direction of the Kansas Company.; and, by virtue of such control, the Kansas Company has annually since May, 1890, elected the directors of the Pacific Company, the majority of whom were directors of the Kansas Company. In July, 1899, an indenture of consolidation was executed by the proper officers of the two corporations, whereby the Pacific Company agreed to consolidate with the Kansas Company, and for that purpose to merge its capital stock, franchises, property, and rights with the capital stock, franchises, and rights of the Kansas Company, so that the two parties should "form a single corporation, under the name of the Missouri, Kansas & Texas Railway Company." By the indenture the Kansas Company agreed to accept such merger and consolidation, and to increase its common stock by an amount equal to the capital stock of the Pacific Company, and when authorized, in conformity to law, to do so, to place it in the hands of the president of the Pacific Company, to be exchanged on such consolidation for the stock of the Pacific Company. The agreement was approved and ratified by holders of 16,730 of the 25,000 shares of the capital stock of the Pacific Company, and by more than two-thirds of the holders of the capital stock of the Kansas Company. Of the ratifying shares of the Pacific Company, 16,715 were held by the Southwestern Coal & Improvement Company, and practically owned by the Kansas Company. Thereafter the indenture was filed in the office of the secretary of state of Kansas. The Kansas Company increased its capital stock by 25,000 shares, and placed the shares in the hands of the president of the Pacific Company for exchange for the capital stock of that company, pursuant to the terms of the agreement.

By Laws Kan. 1889, c. 196, any two railroads owning connecting lines of railroad in the state, or lines of railroad which, when completed, will connect with each other, are authorized to consolidate. This act, among other things, provides as follows:

"In order to accomplish such consolidation the companies may enter into a contract fixing the terms and conditions thereof, which shall first be ratified and approved by parties representing two-thirds of all the stock held in each company at a meeting of the stockholders called for that purpose, or by the approval in writing of the persons or parties holding and representing two-thirds of such stock; and when so ratified and approved and a name for the consolidated company shall have been adopted by the agreement of the contracting parties, or by the board of directors of the consolidated company,

a certified copy of such articles of agreement with the company name to be assumed shall be filed with the secretary of state, when consolidation shall be considered duly consummated, and a certified copy from the office of the secretary of state shall be deemed conclusive evidence thereof, and such consolidated company shall then and thereafter be a corporation of the state of Kansas."

The present action was brought in behalf of all the stockholders of the Pacific Company similarly situated with the complainants, and the bill alleges the necessary facts to authorize a stockholders' suit to enforce a right of action belonging to a corporation which the corporation refuses to assert. The bill of complaint avers, in substance, that the earnings due under the terms of the lease were not fairly apportioned to the Pacific Company, and, if they had been, that the shares of the Pacific Company would have earned dividends and been valuable; that the Kansas Company manipulated the division of earnings between its own lines and the leased line, so that there was never any surplus available for the payment of dividends to the stockholders of the Pacific Company; that when the officers of the Pacific Company took action looking to an accounting the directors of the Kansas Company devised the scheme of consolidation; that the real purpose of the scheme of consolidation was to enable the Kansas Company to become the owner instead of the lessee of the railroad of the Pacific Company, and to acquire it without paying any substantial equivalent for it. The relief prayed for is that the two companies be decreed to carry out the provisions of the lease; that the Kansas Company account for the earnings under the lease to which the Pacific Company was justly entitled, and the Pacific Company be decreed to pay over to the minority stockholders so much thereof as they are entitled to receive; and that the two companies be restrained from proceeding to carry out the scheme of consolidation, and particularly from attempting to exchange any stock of the Pacific Company for the stock of the Kansas Company.

It is not asserted by the complainants that the statutes of Kansas relating to the consolidation of railroad companies were not complied with. Their contention is that the consolidation was a fraud upon the rights of the minority stockholders of the Pacific Company, originated and carried out by the Kansas Company with a view to destroy the pre-existing lease. It also insisted that the consolidation was ultra vires as to the Kansas Company, because by the statutes of Kansas in force when that company was incorporated railroad companies were not authorized to consolidate without the unanimous consent of the stockholders of the contracting parties; and also that it was void as to the Pacific Company because by the statute in force when that company was incorporated a consolidation was not authorized between railroad companies whose lines of railway merely connected, but did not form a continuous line or lines. The latter contentions were not considered by the court below, but the court ordered an injunction upon the ground that the facts alleged in the bill and supported by the depositions warranted the theory of the complainants that the agreement of consolidation was a fraud upon the minority stockholders, and that the officers of the Pacific Company, inter-

ested in and controlled by the Kansas Company, in collusion with the latter, had "so arranged credits and charges and distribution of earnings that for some time past the Pacific Company had not been credited with the amount it should have received under the lease, and thus the apparent value of the road was reduced as a plausible excuse for selling it out to a company in which the majority only were interested, at a price far below its worth." The order enjoined the defendants pendente lite from taking any further step or steps to consummate the scheme of consolidation contained in the indenture of July, 1890, and from calling in, or exchanging, or attempting to exchange, any stock of the Pacific Company for common stock of the Kansas Company, or from removing from the jurisdiction of the court the 25,000 shares of the stock of the Kansas Company proposed to be exchanged.

The judicial discretion exercised in granting a preliminary injunction is invoked in order that the court may prevent such a change of the conditions and relations of persons and property during a litigation as may result in irremediable injury to the complaining party before his rights can be investigated and adjudicated. The prerequisites to the allowance of such an injunction are that the complainant must generally present a clear title, or one free from reasonable doubt, and set forth acts done or threatened by the defendant which will seriously or irreparably injure his rights under such title, unless restrained. Without passing upon the question whether the complainants have presented a case for equitable relief which is reasonably clear, we cannot discover how the acts complained of require the remedy of a preliminary injunction. Their rights will not be substantially impaired if the acts threatened are not prevented. All the steps necessary to consummate the scheme of consolidation had been taken when the action was commenced, and nothing remained to be done which would inflict further injury upon the minority stockholders. Before the consolidation, the Kansas Company, under its powers of control as a majority stockholder of the Pacific Company, completely dominated the management of that company, and the minority stockholders were practically voiceless. They were in no worse position subsequently, and if the minority stockholders were relegated to the previous situation they would be as powerless as they are now, and, as now, could only hope for relief by the intervention of a court of equity. The Kansas Company cannot compel the stockholders of the Pacific Company who do not wish to do so to become stockholders in the Kansas Company, or to accept the new stock in exchange for the old; and if there should be an exchange of part of the stock with the stockholders of the Pacific Company who consent, and the shares are put upon the market and acquired by bona fide holders, the rights of the complainants could not be prejudiced. Having brought their action promptly, no question of laches on their part can be suggested, and the equities of all who derive rights under the indenture of consolidation must be postponed to the prior equities of the complainants. If the consolidation of the two companies was void because ultra vires, a decree annulling the consolidation, and requiring the performance of the lease, and an accounting to the com-

plainants for the rent equitably owing, will adequately protect the complainants. If the consolidation was not void, but was voidable, as to the complainants, because in fraud of their rights as minority stockholders, the same considerations apply. We conclude that the order should be reversed.