BAGLIN et al. v. CUSENIER CO.

'(Circuit Court of Appeals, Second Circuit. June, 1905.)

TRADE-MARKS—INJUNCTION AGAINST INFRINGEMENT—CHARTREUSE.

For many years the order of Carthusian monks, of the convent La Grande Chartreuse, in France, have made and sold a liqueur, under the name "Chartreuse," claimed to have been made by a secret process. Such liqueur has long been sold and has become well known under such name in the United States, where the name is registered as a trade-mark. The order having been expelled from France by the government, a receiver was appointed by a provincial court, who, under authority of the court, now carries on the business, putting up the product of his manufacture in the dress and under the labels and name formerly used by the monks, in which form it is sold in this country by defendant as agent. Meantime the monks re-established their business in Spain, where they make and sell a liqueur under a new trade-mark and labels, which set forth the facts with respect to the removal. No final adjudication of the rights of the parties has been had in France. *Held,* that a preliminary injunction restraining defendant from using in this country the bottles, labels, name, and trade-mark formerly used by the monks, based on affidavits largely made on information and belief, and which do not determine the question whether the product is the same originally sold under such trade-mark, was too broad in its terms, and should at least be modified by allowing sales by defendant, provided an additional label was attached to each package setting forth the facts with respect to the manufacture.

Townsend, Circuit Judge, dissenting, on the ground that the sale by defendant of the receiver's product under the name, labels, and trade-mark of the monks, without any distinguishing mark, was a fraud on the public, which should be enjoined, regardless of the quality of the article or the action of the French courts.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Frederic H. Betts, Charles Howson, and Hubert Howson, for appellant.

Philip Mauro, for appellees.

Before WALLACE, TOWNSEND, and COXE, Circuit Judges.

COXE, Circuit Judge. The questions involved in this appeal are interesting and novel. Many of the important facts, on both sides, are asserted on information and belief. The complainant's case rests solely upon the bill and two affidavits made by Herry Batjer, one of the agents for the complainant in the United States. The verification of the complaint is also by Batjer, who says:

"My information is gained from correspondence with European agents of said order, and from correspondence and conversations with local representatives of the same, and from general reading."

In short, the injunction was asked for upon the statements of one witness who has no actual knowledge of the more important facts upon which relief depends.

It is asserted by Batjer that the defendant is selling a "spurious article" in the United States, but he does not say in what particular it differs from the genuine Chartreuse, except that the latter is somewhat lighter in color. From the nature of the case proof by affidavit upon

this point is impossible. It is asserted that the complainant's product is made by a secret process; and the question whether defendant is selling a bogus liqueur can only be determined by cross-examination and careful chemical analyses. Hostetter v. Comerford (C. C.) 97 Fed. 585.

The defendant insists, also on information and belief, that the liqueur formerly made by the Chartreuse monks derived its value from the aromatic plants grown in the vicinity of the monastery of La Grande Chartreuse, and that the monks have always insisted that the genuine article cannot be made elsewhere. It is therefore argued that the liqueur made by the monks at Tarragona, Spain, is not and cannot be the genuine Chartreuse. In other words, each party contends that he is selling the genuine article and his adversary the bogus article.

Both parties agree, apparently, upon the following facts:

First. The order of Chartreuse monks had for many years occupied a monastery near Voiron, France, where they had manufactured and sold a liqueur known as "Chartreuse."

Second. This order was refused authorization under the French law of July 1, 1901, known as the "Associations Act," was judicially dissolved and its members expelled from France.

Third. A receiver of all the property of the said order was appointed, pendente lite, by a French court, having jurisdiction, and was duly authorized to carry on the business of La Grande Chartreuse, and to use the distillery fixtures, trade-marks and good will of the business which the monks were directed to turn over to him. The defendant here is the agent of the receiver, M. Lecouturier.

Fourth. After their expulsion from France the monks established a factory at Tarragona, in Spain, where they make the liqueur sold by Batjer & Co. in this country under a new label and trade-mark having no resemblance, from a legal viewpoint, to the trade-marks and labels used by them in France. The only person now using the old labels and trade-marks is the receiver appointed by the French court.

Fifth. When ordered to give up and assign their trade-marks the monks failed to do so, giving as an excuse that the trade-marks did not belong to the order, but to the Abbe Rey. The court, however, decided that this contention was not well founded, and that the trade-marks were held by Rey as trustee for the order.

Sixth. The legal aspect of the case in France has not, so far as appears from the record, been finally determined. As counsel for the complainant says:

"Even as to the extent of the liquidator's [receiver's] power in France the highest courts of that country have yet to be heard from."

"Even as to the extent of the liquidator's [receiver's] power in France the highest courts of that country have yet to be heard from."

Nothing further is needed to demonstrate the novelty and importance of the issues and the difficulty in deciding them upon a record so inconclusive and unsatisfactory. Indeed, we hesitate to express an opinion upon the law, as the cause may be brought here again upon a complete record, presenting the question in a wholly different aspect.

The injunction order is broad and unconditional. It enjoins the defendant, who is the agent here of the receiver appointed by the French

court, from using the bottles, labels and trade-marks, which his principal is using under the protection of the law in France. In this connection, it should be remembered that the complainant is not now using these bottles, labels and trade-marks, and his right to use them has been denied. The financial responsibility of the defendant is not disputed. In these circumstances we are of the opinion that so sweeping an injunction should not have been granted upon ex parte affidavits, based largely upon information and belief. Stevens v. Missouri, 106 Fed. 771, 45 C. C. A. 611; Blakey et al. v. Nat. Mfg. Co., 95 Fed. 136, 37 C. C. A. 27; Air Brake Co. v. Westinghouse, 69 Fed. 715, 16 C. C. A. 371; Westinghouse Co. v. Montgomery Co. (decided by this court May 3, 1905, 139 Fed. 868).

In view of the fact that the record discloses instances where the public have been misled by the sale of the defendant's goods under the old labels without explanation, it may be that the Circuit Court will see fit to grant an injunction nisi. It would seem that pending final hearing all confusion might be avoided if the defendant should attach to its bottles labels similar to those adopted by the complainant, stating that:

"This liqueur is made at the Grande Chartreuse, in France, under the direction of M. Lecouturier, appointed liquidator of the property of the congregation of Carthusian monks after its dissolution and expulsion from France."

We are inclined to think that an order granting an injunction, unless a notice similar to the above is attached to each package offered for sale, would be within the discretion of the court.

The order is reversed.

TOWNSEND, Circuit Judge. I dissent from the opinion of the court. There is no uncertainty as to the material facts upon which the injunction was granted, namely, the validity of the trade-name "Chartreuse," complainant's title and long continued possession, and the infringement by defendant, and deception of the public. The only doubts raised are as to defendant's rights even in France. The judgment there is only that of an inferior court; it only applies to the judicial liquidation of complainant's property held in France; it states that "nothing is yet definitely adjudged * * * on the ownership," even in France; and it cannot have any extraterritorial force binding on our courts, nor can it bestow on its grantee in France any right to deceive the American public. In view of these doubts, it is clearly unjust to refuse protection to complainant until after defendant shall have removed said doubts and established some right to the interposition of the court.

Judge Story first laid down the rule, afterwards followed in England, and applied in Germany to the case of an alien enemy, that alien friends were entitled to claim the same protection of their rights as citizens. Complainant is an alien. His claim to the trade-name "Chartreuse" rests upon the fundamental doctrine of the law of trade-marks, the right of the public to be protected against deception. One of the chief objects of the law is to prevent the commission of a fraud on the public by the sale of an article with an imitated trade-mark in such a manner as to deceive purchasers. This trade-name, registered in the

patent office, is a right of property created by complainant in this country and repeatedly recognized by, our courts. It is a personal property right, which cannot be confiscated by extraterritorial proceedings or divested or assigned in invitum, except in the methods pointed out by the decisions under our laws.

These elements of recognition, registration, and adjudication create a presumption in complainant's favor which cannot be overthrown by indefinite and uncertain assertions as to complainant's rights in France, but all such questions should be reserved until final hearing. The attempt to palm off on the American public a product of some decoction, the composition of which is unknown, manufactured by an assignee of a French liquidator, by the appropriation of complainant's labels, which falsely indicate to the American public that it is purchasing a wellknown product made by a secret process by this order of monks, which labels are stamped with a counterfeit of the signature of the order, is an attempt by fraud to make a gain out of the confidence of the public in the individual skill of the members of said order, and to appropriate, in violation of law and without consideration, that intangible, and incorporeal, but no less sacred, right of property, the good will of the complainant.

This order should be affirmed.