HOWARD W. LYON and Others, Individually and as Stockholders of Bethlehem Steel Corporation, Suing in Their Own Behalf and in Behalf of All Other Stockholders of Bethlehem Steel Corporation, Similarly Situated, and in Behalf of Said Corporation, Plaintiffs, v. CHARLES R. HOLTON and Others, and BETHLEHEM STEEL CORPORATION, Defendants.

Supreme Court, Special Term, New York County, May 18, 1938.

Bennet, House & Couts, for the plaintiffs.

Cravath, deGersdorff, Swaine & Wood, for the defendant Bethlehem Steel Corporation.

PECORA, J. This is a derivative action brought by plaintiffs, as minority stockholders of the Bethlehem Steel Corporation, against the corporation and fifteen individual defendants composing its officers and directors.

Plaintiffs now move for an injunction pendente lite, in which they seek, among other things, to restrain defendants Schwab, Grace, Marshall and Johnston from soliciting and using proxies from the corporation's stockholders, in connection with a certain proposal (hereinafter more fully discussed), to be submitted to the stockholders at the annual meeting to be held on May 19, 1938.

The allegations of the complaint, in so far as they are material to this decision, in substance charge the individual defendants with the following acts:

(a) That prior to January 10, 1930, through the use of their power as the officers and directors of the corporation, they caused it to purchase, with its corporate funds, in the open market, 221,200 shares of its common stock at prices averaging $91.60 per share.

(b) That said purchase was not made for corporate purposes, but for resale to most of the individual defendants and for their benefit.

(c) That on January 10, 1930, they caused the corporation to sell these 221,200 shares, in various lots, to themselves and others for $91.60 per share, upon secretly formulated terms of cash or deferred payments, at the rate of fifty cents per share per month, to be deducted from their compensation, and crediting the dividends subsequently paid on such shares against the unpaid purchase price. The plan under which these sales were made is known as the management stock ownership plan.

(d) That said plan was devised to enable them to make a profit through the expected enhancement of the market value of the stock because of a then secretly contemplated merger of the corporation with the Youngstown Sheet and Tube Company, negotiations for which were then secretly under way (this merger, however, subsequently failed of consummation).

(e) That to date about $4,000,000 has been paid to the corporation by the purchasers under this plan, leaving a balance of over $16,000,000 which they still owe to the corporation upon their subscription or purchase agreements.

(f) That the market value of the stock now being far below $91.60 per share, they now propose to have the corporation cancel these subscription agreements, thereby relieving the purchasers from their aggregate obligations to pay said $16,000,000 to the corporation; and to have the corporation refund to them the $4,000,000 in installment payments so far made by them. (This is the proposal to which parenthetic reference was hereinabove made.)

(g) That the defendants Schwab, Grace, Marshall and Johnston are a proxy committee now soliciting proxies from stockholders to vote for the adoption of that proposal at the forthcoming annual meeting; that in soliciting the proxies, defendant Schwab has addressed a letter to the stockholders which fails to set forth the true nature of the proposal, and which contains false and misleading statements with respect thereto.

It should be noted that the defendants Schwab, Marshall and Johnston — three of the four members of the proxy committee — are not participants in the management stock ownership plan.

The learned counsel for such defendants as have either been served or have appeared therein, admitted with refreshing and commendable candor, upon the oral argument, that the proposal would stamp the management stock ownership plan with a " heads-I-win-tails-you-lose " aspect. He further acknowledged that the

sponsors of the proposal claimed for it the virtue of preserving the loyalty to the corporation of such of its officers and directors as were permitted to participate in the advantages intended to flow from the original plan.

This court cannot help from observing that the species of loyalty evoked by making the exemplars of it the beneficiaries of a " heads-I-win-tails-you-lose " policy might be of doubtful value. Officers and directors of a corporation owe to it their undivided and unqualified loyalty. For their services they should receive a fair and adequate compensation, which should be openly fixed and paid to them. They should never be permitted to profit personally at the expense of the corporation. Nor must they allow their private interests to conflict with the corporate interests. These are elementary rules of equity and business morality. Courts of equity must ever enforce strict compliance with these rules.

The temporary injunction here sought, if granted, would virtually prevent the stockholders of the defendant corporation from considering and acting upon the proposal at their annual meeting. Injunctions of that kind could be used for many mischievous purposes. They could operate to prevent stockholders from reaching a timely decision upon a matter of vital importance to their corporation. They could be used to substitute an uninformed or arbitrary judgment for that of the stockholders themselves. Stockholders should not lightly be divested of their right to determine the policies of their corporation. Hence such injunctions, even though temporary, should be granted only in such extreme circumstances as would render their issuance imperatively necessary to prevent an irreparable wrong or damage.

The moving papers here do not disclose the existence of any such circumstances. Even if we assume that the allegations of the complaint are true, there is no assurance that the proposal which is attacked by plaintiffs will be approved by the stockholders at the annual meeting. Assuming further that it should receive such approval, plaintiffs could still obtain a final judgment, upon the trial, restraining its consummation upon proof that it was obtained by false or misleading representations addressed to the stockholders, or by a fraudulent suppression of the truth. Indeed, the court would have ample power to grant equitable relief molded to fit the proven facts, if they be of a character entitling plaintiffs thereto. This follows from the undisputed fact that, even if the proposal be approved, it cannot by its very terms become effective until December, 1939.

The rule is soundly established that a preliminary injunction will not be granted except in a case where the party seeking it

clearly shows it to be necessary to protect him from irreparable injury. (*Stevens* v. *Missouri, K. & T. R. Co.*, 106 Fed. 771; *Star Co.* v. *Colver Pub. House*, 141 id. 129.) A succinct expression of this rule was made in the *Stevens* case (*supra*, at p. 774) in these words: " The judicial discretion exercised in granting a preliminary injunction is invoked in order that the court may prevent such a change of the conditions and relations of persons and property during a litigation as may result in irremediable injury to the complaining party before his rights can be investigated and adjudicated."

The foregoing considerations make it unnecessary to pass upon the other points which have been raised.

The motion is denied, but without costs.