HERMAN DIAMOND, Appellant, *v.* WALTER R. OREAMUNO et al., Respondents.

First Department, February 20, 1968.

*Sidney B. Silverman* for appellant.

*Norman Moloshok* of counsel (*Delson & Gordon,* attorneys), for respondents.

BOTEIN, P. J. This is a stockholder's derivative action against the directors of Management Assistance, Inc. (MAI), a New York corporation. The primary demand of the complaint is that two of the directors, Walter R. Oreamuno and Jorge M. Gonzalez, account to MAI for profits allegedly made by them through the use of inside information in connection with sales by them of MAI stock. Similar relief is also sought against the remaining directors on the ground that they " either approved, acquiesced in or ratified the wrongful transactions." The appeal before us is from an order granting a motion to dismiss the com-

plaint for failure to state a cause of action, and from the judgment entered pursuant to the order.

According to the complaint, Oreamuno and Gonzalez are respectively the chairman of the board of directors and the president of MAI, and with their wives own almost 14% of MAI's common stock. By the end of August, 1966 it became apparent to Oreamuno and Gonzalez, " solely by virtue of their position as MAI's chief executive and operating officers," that the corporate earnings would be sharply reduced from both the July, 1966 and the August, 1965 figures. This information did not become known to the stockholders of MAI or the investing public until October 18, 1966, when MAI published its August, 1966 operating results. They showed that MAI earned $66,233 in August, 1966 as compared with $262,253 in July, 1966 and $114,048 in August, 1965. Before such publication, and in September, 1966, Oreamuno sold 28,500 shares of MAI's common stock, and Gonzalez 28,000 shares.[1] The stock is traded over-the-counter, and during September, 1966 the bid price was not less than $23.75 a share and reached $28.875. After the earnings figures were published, and as a direct result, the bid price fell to $11.

The basis of defendants' knowledge that the earnings would decline is not set forth in the complaint, nor is the composition of the profits allegedly derived from such knowledge.[2] Defendants do not contend the pleading is inadequate in these respects. They take the following flat position: " A corporation does not have a cause of action against a director who sells his own stock in the corporation to a third person relying upon information known by him by virtue of his office but not disclosed publicly. Whether or not the insider is liable to the purchaser of such stock, there is no liability to the corporation which sustained no loss." They add: " There was no diversion of any corporate or business opportunity; the corporation was not planning to sell any stock; there was no waste or diversion of a corporate

---

[1] The complaint does not state who bought the shares. Plaintiff concededly bought none and does not charge that MAI bought any. Whether the purchasers were or were not existing stockholders we regard as irrelevant to the controlling issue.

[2] Other parts of the record indicate that a material operating expense which MAI incurs in its business is the cost of servicing punch card equipment leased to customers, that the servicing is performed on behalf and at the expense of MAI by another corporation, and that in August, 1966 the latter corporation increased its rates substantially, with a severe impact on earnings. With regard to the alleged profits, plaintiff's bill of particulars states, "Defendants Oreamuno and Gonzalez profited because they receeived an inflated price for the 56,500 shares of stock sold by them in September, 1966."

asset; and there was no damage to the corporation's business, credit or reputation. The sale did not affect the control of the corporation."

We think defendants' position neglects an established principle of agency. "A corporation aggregate can only act by agents. Its trustees or directors are its agents for managing its affairs" (*Carpenter* v. *Danforth,* 52 Barb. 581, 584). The information Oreamuno and Gonzalez acquired pertained to, and they obtained it in the course of managing, the affairs of MAI, their principal. To it their relation was "essentially that of trustee and *cestui que trust*" (*Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185, 193), and "the responsibility of the fiduciary is not limited to a proper regard for the tangible balance sheet assets of the corporation" (*Perlman* v. *Feldmann,* 219 F. 2d 173, 176, cert. den. 349 U. S. 952). What they acquired, and its avails if they exploited it, they were bound to hold for the benefit of MAI (Seavey, Agency, §§ 147, 148; Restatement, Agency 2d, § 388). This would hardly be questioned if for a consideration they had disclosed such confidential information to a trader in securities,[3] nor would it be suggested that their principal, though deprived of the benefit of the consideration, had suffered no loss (compare the example given in *Dutton* v. *Willner,* 52 N. Y. 312, 321; *Howe* v. *Savory,* 51 N. Y. 631).

Had MAI itself been planning to market stock, the possibility of harm to it, resulting from competing sales by the two directors, might furnish an added element of liability (cf. *Brophy* v. *Cities Serv. Co.,* 31 Del. Ch. 241). Not only would the avails of the inside information be withheld from the corporation, but the method of realizing them might possibly damage it. Indeed there may be other damaging factors which cannot be found literally within the boundaries of the offending transactions. The prestige and good will of a corporation, so vital to its prosperity, may be undermined by the revelation that its chief officers had been making personal profits out of corporate events which they had not disclosed to the community of stockholders. And cf. Schotland, Unsafe At Any Price: A Reply to Manne, Insider Trading And The Stock Market, 53 Va. L. Rev. 1425, 1452: "If insiders are free to trade on undisclosed material information, they are subject to a conflict of interest that may affect their judgment not only in the timing of disclosure, but also in the timing of the underlying events themselves. Still worse, the insiders' interest in personal trad-

---

[3] "Although there are no cases directly on the point, it is very likely that a court would hold the direct sale of insider information by an insider to be a breach of fiduciary duty." (Manne, Insider Trading and the Stock Market, 60.)

ing profits not only may affect their judgment in the timing of disclosure, but also may cause such events to be created—for example, a dividend might be declared when sound business judgment would have omitted it. That is garden-variety mismanagement, and the only effective way to prevent it is to bar the conflict of interest in the first place. Nor are these conflicts of interest the only danger to the corporation's welfare. The pursuit of personal trading profits is likely to distract the insider from the pursuit of corporate tasks, for which the corporation presumably is paying full, adequate compensation already and expects full, single-minded dedication in return.''

We need not in this case concern ourselves with these added elements. These fiduciaries are not being charged because they sold stock, or because transactions in securities might subvert their proper functioning as executives of MAI or blemish its reputation. They are being charged because they converted into money to their own use something belonging not to them but to their corporation—inside information. That the method of conversion consisted of transactions in securities is not the legally significant factor.

This conclusion is not inconsistent with New York law regarding purchases and sales of stock by directors. '' Ordinarily,'' it was said in *Hauben* v. *Morris* (255 App. Div. 35, 46, affd. 281 N. Y. 652), '' a director may deal in securities of his corporation without subjecting himself to any liability to account for profits, for the corporation as such has no interest in its outstanding stock or in dealings in its shares among its stockholders.'' A like thought was expressed in *Securities Comm.* v. *Chenery Corp.* (318 U. S. 80, 88): '' As the Commission concedes here, the courts do not impose upon officers and directors of a corporation any fiduciary duty to its stockholders which precludes them, merely because they are officers and directors, from buying and selling the corporation's stock.'' But in neither case was the use of inside information the issue. Indeed in *Chenery* the court, in exonerating the officers and directors, was careful to mention the absence of any finding that they '' acted covertly or traded on inside knowledge '' (p. 86). Whatever the authority of these cases for the proposition that a director owes no fiduciary duty to the corporation in his capacity as a holder of stock, they hardly support a thesis that he owes no such duty as a possessor of corporate inside information. The Restatement, Agency 2d (§ 388, Comment *c*) puts the matter compactly: '' *c. Use of confidential information.* An agent who acquires confidential information in the course of his employment or in violation of his duties has a duty not to use it to the disadvantage of the

principal, see § 395. He also has a duty to account for any profits made by the use of such information, although this does not harm the principal. Thus, where a corporation has decided to operate an enterprise at a place where land values will be increased because of such operation, a corporate officer who takes advantage of his special knowledge to buy land in the vicinity is accountable for the profits he makes, even though such purchases have no adverse effect upon the enterprise. So, if he has 'inside' information that the corporation is about to purchase or sell securities, or to declare or to pass a dividend, profits made by him in stock transactions undertaken because of his knowledge are held in constructive trust for the principal. He is also liable for profits made by selling confidential information to third persons, even though the principal is not adversely affected.''[4]

---

[4] A statutory adaptation of the principle is found in subdivision (b) of section 16 of the Securities Exchange Act of 1934 (U. S. Code, tit. 15, § 78p, subd. [b]), dealing with "short-swing" trading by insiders in certain classes of the securities to which the act applies. The section requires an insider to turn over to his corporation any profit realized by him from any purchase and sale, or any sale and purchase, within any period of less than six months. Designed as a "'crude rule of thumb'" to curb the abuse of inside information (*Blau* v. *Lamb*, 363 F. 2d 507, 515), the section is applicable even though the insider "did not utilize, or even possess, confidential corporate information" (*Blau* v. *Max Factor & Co.*, 342 F. 2d 304, 307, n. 6, cert. den. 382 U. S. 892). This legislation is not involved in the instant suit but it is of interest here because of its provision that the profit "shall inure to and be recoverable by the issuer." For this provision, it was explained on behalf of the draftsmen to the House Committee on Interstate and Foreign Commerce, "'is simply an application of an old principle of the law that if you are an agent and you profit by inside information concerning the affairs of your principal, your profits go to your principal.'" (2 Loss, Securities Regulation, p. 1123.) Some years later, successfully opposing before the committee a proposal to repeal the provision, the Chairman of the Securities and Exchange Commission explained its basis as follows: "The Exchange Act proceeds on the theory that the confidential information which a corporate insider cannot help but have is information which in a real sense belongs to the corporation, since he acquired it confidentially and in his representative capacity as an official or principal stockholder of the corporation. Thus, this information is regarded by the act as the corporation's property, not the personal property of the insider to do with as he chooses. Since such corporate knowledge is the property of the beneficiary corporation, any profits resulting from its use belong to the insiders no more than does the inside information itself." (Hearings before House Committee on Interstate and Foreign Commerce on Proposed Amendments to Securities Act of 1933 and to Securities Exchange Act of 1934, 77th Cong. 1st Sess. [1942], p. 1257.) See also *Birnbaum* v. *Newport Steel Corp.* (193 F. 2d 461, 464, cert. den. 343 U. S. 956); Conant, Duties of Disclosure of Corporate Insiders Who Purchase Shares, 46 Cor. L. Q. 53, 64; Cary, Corporate Standards and Legal Rules, 50 Calif. L. Rev. 408, 415; Painter, Inside Information: Growing Pains for the Development of Federal Corporation Law under Rule 10b-5, 65 Col. L. Rev. 1361, 1384.)

Oreamuno and Gonzalez may conceivably be sued by the purchasers of their stock for culpable failure to disclose material information, and some argument is made that they may incur double liability if the suits should be brought and prove successful (see Conant, Duties of Disclosure of Corporate Insiders Who Purchase Shares, 46 Cor. L. Q. 53, 68; Cook and Feldman, Insider Trading under the Securities Exchange Act, 66 Harv. L. Rev. 385, 409, n. 99; Comment, 59 Yale L. J. 1120, 1140–1142). We see no need to reach the point on the present record.

It is not charged that directors other than Oreamuno and Gonzalez participated in the sales by those two, and we regard the allegations against the others as insufficient to warrant keeping them in the action.

The order entered on March 1, 1967 should be modified, on the law, to deny the motion of defendants Oreamuno and Gonzalez to dismiss the complaint as to them, the judgment entered on March 9, 1967 reversed to the extent that it dismisses the complaint as to them, and the order and judgment otherwise affirmed, without costs or disbursements.

TILZER, RABIN and WITMER, JJ., concur; STEVENS, J., dissents and votes to affirm.

Order and judgment modified, on the law, to the extent of denying the motion of defendants, Walter R. Oreamuno and Jorge M. Gonzalez, to dismiss the complaint as to them, the action severed as to said defendants, and, as so modified, affirmed, without costs or disbursements.