**Stuart K. PATRICK, Plaintiff,**

v.

**Herbert ALLEN, III, Terry Allen Kramer, Nathaniel Kramer, Hans Kertess, Richard Rainwater, and Dixon Boardman, Defendants.**

**No. 04 Civ. 0657(WHP).**

United States District Court, S.D. New York.

Jan. 19, 2005.

John Halebian, Lovell, Stewart, Halebian LLP, New York, NY, for Plaintiff.

Joel C. Feffer, Daniella Quitt, Wechsler Harwood LLP, New York, NY, for Plaintiff.

Richard A. Martin, Heller, Ehrman, White & McAuliffe LLP, New York, NY, for Defendants.

*MEMORANDUM AND ORDER*

PAULEY, District Judge.

Stuart K. Patrick ("Plaintiff" or "Patrick"), a shareholder and former director of Real Property Owners, Inc. ("RPO"), brings this diversity action against the directors of RPO (collectively, "Defendants"). Patrick alleges that Defendants breached their fiduciary duties to RPO and its shareholders and committed corporate waste by mismanaging RPO's lone asset: a 174–acre property in Nassau County that has been leased to Deepdale Golf Club

("Deepdale") at break-even rent for the past 48 years.

Presently before this Court is Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that their decisions as directors are shielded from judicial review by the business judgment rule and that the Complaint fails to state a claim for either breach of fiduciary duty or waste.[1] For the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

Deepdale is an exclusive golf club in North Hills, New York, with approximately 250 members and an initiation fee of nearly $100,000. (Complaint ("Compl.") ¶ 17.) Deepdale's members include prominent figures in sports, entertainment, fashion and finance. (Compl.¶ 17.) In 1947, Deepdale Golf Club was located on the former Vanderbilt Estate in Lake Success. (Compl.¶ 20.) At that time, members of Deepdale formed RPO as a privately traded New York corporation and organized it "as a real estate business, a real estate agency, and a real estate brokerage business" to purchase the tract occupied by Deepdale. (Compl.¶¶ 16, 20.) RPO sold that property to private investors in 1954. (Compl.¶ 20.) Two years later, RPO purchased the Grace Estate in North Hills (the "Property") and leased it to Deepdale. (Compl.¶ 21.) A December 2000 appraisal valued the 174–acre Property at $35–40 million. (Compl.¶ 28.)

Since acquiring the Property, RPO has leased it exclusively to Deepdale. (Compl.¶¶ 22–23.) The arrangement be-

gan by an oral agreement requiring Deepdale to pay annual rent equaling the Property's real estate taxes and liability insurance costs. (Compl.¶ 22.) In 1976, the parties executed a written lease for the period from March 1, 1976 through February 28, 1977, with a provision that it could be extended for consecutive one-year terms by written agreement. (Compl.¶¶ 22–23.) Such an agreement was executed for the 1977–78 term. (Compl.¶ 23.) Although Deepdale has continued to use the Property and pay rent to RPO since 1978, no subsequent agreement or lease has been executed. (Compl.¶ 23.) Currently, the annual rent is $330,000—an amount sufficient only to cover the real estate taxes and insurance costs associated with the Property. (Compl.¶ 27.) Plaintiff alleges that the fair market annual rent for the Property is at least $6 million, which would require Deepdale to increase its annual dues substantially. (Compl.¶¶ 4, 29.)

At RPO's inception, most of its shareholders were members of Deepdale. (Compl.¶ 2.) Over time, as non-members inherited or privately purchased RPO shares, the corporation's shareholders became more diversified. (Compl.¶ 4.) In 1976, with approximately 14,000 shares outstanding, RPO embarked on a private offering of an additional 1,000 shares. (Compl.¶ 24.) In order to sell the entire allotment, RPO sold shares to nonmembers, including Deepdale employees. (Compl.¶ 25.) At present, only 35% of RPO shareholders are Deepdale members. (Compl.¶ 5.)

Plaintiff has never been a member of Deepdale. (Compl.¶ 12.) He was on the

---

1. Defendants also argue that this Court should abstain from this action in light of a similar suit pending on appeal in New York State court, *Amorim v. Allen*, Docket No. 2003–05677 (App.Div.2d Dep't). (Defendants' Memorandum in Support of Motion to Dismiss, dated May 3, 2004 ("Def.Mem.") at 15–21.) Defendants' abstention argument was mooted when the *Amorim* plaintiffs withdrew their appeal. *See* Letter to the Court from John Halebian, dated Nov. 1, 2004.

RPO board of directors from 1989 through June 2004. (Compl. ¶ 12; Hearing Transcript, dated June 30, 2004 at 15.)[2] Two of the defendants, Herbert Allen, III ("Allen") and Terry Allen Kramer ("Kramer"), are descendents of Charles Allen, one of Deepdale's founders. (Compl.¶¶ 13–14.) Allen and Kramer are both long-time members of Deepdale but were elected to the RPO board only in May 2000. (Compl.¶¶ 13–14, 30.) The remaining four defendants, Nathaniel Kramer, Hans Kertess, Richard Rainwater and Dixon Boardman, are also Deepdale members and were elected to RPO's board on January 30, 2003. (Compl.¶¶ 15, 46.)

The Complaint alleges that from 2000 through 2002, Plaintiff pushed for a higher rent and urged the full board to consider selling the Property, but defendants Allen and Kramer refused to entertain any alteration of the status quo. (Compl.¶¶ 32–39.) For instance, when Patrick suggested that RPO raise the rent to $500,000, Allen and Kramer rejected his proposal outright. (Compl.¶¶ 33–34.) Similarly, in March 2002, Bayswater Development, LLC indicated its intent to purchase the Property for $35 million (the "Bayswater Letter of Intent"). (Compl. ¶ 38; Affidavit of Richard A. Martin, dated May 3, 2004 ("Martin Aff.") Ex. M.) Allen and Kramer refused to meet with Bayswater and indicated that they would vote their shares against any such a sale. (Compl. ¶ 39; Martin Aff. Ex. B: Letter from Allen and Kramer to RPO Shareholders, dated July 1, 2002; Martin Aff. Ex. N: Letter from Plaintiff to RPO Shareholders, dated June 25, 2002.) Like Allen and Kramer, the newer directors have refused to consider any changes because, according to Plaintiff, their loyalties are "hopelessly" divided between RPO and Deepdale. (Compl.¶ 47.)

In July 2002, Allen and Kramer offered to purchase from RPO shareholders 2,000 shares at a price of $900 per share, plus a subsequent payment if and when Allen and Kramer "voluntarily" sold the purchased shares within ten years. (Compl.¶ 41.) Plaintiff alleges that Allen and Kramer materially misled RPO shareholders because they failed to mention the strong likelihood that the shares would be liquidated by governmental action or court decree. (Compl.¶¶ 41–44.) For instance, the offer did not mention that the Mayor of North Hills intimated in May 2000 that he would condemn the Property and transform it into a public golf course. (Compl.¶ 42.) Nor did the offer disclose that Plaintiff had threatened a lawsuit to compel dissolution of RPO. (Compl.¶ 43.)

On January 27, 2004, Patrick filed this action against the balance of the then-existing RPO board pursuant to BCL § 720. (Compl.¶ 1.) Section 720 permits a director of a corporation to sue another director for, *inter alia*, mismanagement and waste of corporate assets. N.Y. Bus. Corp. Law § 720(a)(1). The Complaint alleges that Defendants breached their fiduciary duties and committed corporate waste by failing to extract a reasonable rent from Deepdale and "by failing to allow the RPO [b]oard to negotiate in good faith for a possible sale of the Property." (Compl.¶¶ 53, 58.) The Complaint also alleges that Defendants Allen and Kramer breached their fiduciary duties by "offering to purchase additional shares so as to entrench their unlawful scheme and acquire such shares at an unfairly low price." (Compl. ¶ 53; *see* Compl. ¶ 58.)[3]

**2.** Plaintiff continues to have standing to bring suit under New York Business Corporation Law ("BCL") § 720 despite no longer being a director because he was a director when the action was filed. *See Tenney v. Rosenthal*, 6 N.Y.2d 204, 189 N.Y.S.2d 158, 160, 160 N.E.2d 463 (1959); *Levine v. Chavkin*, 82 Misc.2d 441, 369 N.Y.S.2d 588, 590 (1974).

**3.** Plaintiff has voluntarily withdrawn his dissolution claim (Compl.¶¶ 62–66). (*See* Plaintiff's Memorandum in Opposition to Motion to

## DISCUSSION

Defendants move pursuant to Rule 12(b)(6) to dismiss the Complaint for failure to state a claim. Defendants contend that their decisions regarding the Property and Deepdale are shielded by New York's business judgment rule and that Plaintiff has not sufficiently alleged a breach of fiduciary duty or corporate waste.

### I. Legal Standard on a Motion to Dismiss

On a motion to dismiss under Fed. R.Civ.P. 12(b)(6), a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir.1998). A court should not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In this limited task, the issue is not whether a plaintiff will ultimately prevail on his claim, but whether the plaintiff is entitled to offer evidence in support of the allegations in the complaint. *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 62 (2d Cir.1997).

### A. Matters Outside the Pleadings

■ In resolving a motion to dismiss for failure to state a claim, a court's "consideration is limited to facts stated on the face of the complaint, in documents appended to complaint or incorporated in the complaint by reference, and to such matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). Such documents are considered to be part of the complaint. *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991). A court may also consider "documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). "A plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Chambers*, 282 F.3d at 153 (emphasis in original). However, for a court to take into account any documents other than those meeting the above standards, the court must convert the motion to dismiss into one for summary judgment and afford the parties an opportunity to present additional materials. Fed.R.Civ.P. 12(c); *Chambers*, 282 F.3d at 152.

■ Both Plaintiff and Defendants have submitted extensive materials and raised matters which are dehors the pleadings. Defendants, for instance, focus much attention on the June 9, 2004 meeting of stockholders, despite the fact that Plaintiff filed the Complaint in January 2004.[4] This

---

Dismiss, dated June 4, 2004 ("Pl.Mem.") at 8–9.)

**4.** Defendants argue that the June 9th meeting compels dismissal of the Complaint because a majority of shareholders ratified Defendants' handling of the Property. (Defendants' Memorandum in Further Support of Motion to Dismiss, dated June 14, 2004 ("Def. Reply Mem.") at 5–6.) *See Shapiro v. Rockville Country Club, Inc.*, Index No. 15308–02, 2004

WL 398980, at *13 (N.Y.Sup.Ct. Feb.23, 2004) ("Once an action of the board of directors of a corporation is ratified by the shareholders, it may not be reviewed by the court.") However, corporate waste cannot be ratified by shareholder vote. *Meredith v. Camp Hill Estates, Inc.*, 77 A.D.2d 649, 430 N.Y.S.2d 383, 385 (2d Dep't 1980). As discussed *infra*, this Court finds that Plaintiff has stated a claim for waste.

Court declines to accept the invitation to consider these extraneous matters and convert Defendants' motion to dismiss into one for summary judgment.[5]

## II. Business Judgment Rule

Defendants argue that Plaintiff's claims are foreclosed by operation of the business judgment rule because the claims challenge the decisions of RPO's directors.

■ New York law governs this action since RPO is a New York corporation. *See Hanson Trust PLC v. ML SCM Acquisition, Inc.*, 781 F.2d 264, 273 (2d Cir. 1986). New York's business judgment rule creates a presumption that a corporation's directors act in good faith and in the best interests of the corporation. *See Auerbach v. Bennett*, 47 N.Y.2d 619, 629, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979); *see also Hanson Trust*, 781 F.2d at 273 ("[A] presumption of propriety inures to the benefit of directors."); *Banque Nationale de Paris S.A. Dublin Branch v. Ins. Co. of North Am.*, 896 F.Supp. 163, 165 (S.D.N.Y.1995) ("[I]nformed business judgments by boards are presumed appropriate absent a showing of self-interest or fraud."). The rule is designed to "bar[ ] judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerbach*, 47 N.Y.2d at 629, 419 N.Y.S.2d 920, 393 N.E.2d 994; *see Pollitz v. Wabash R.R. Co.*, 100 N.E. 721, 207 N.Y. 113, 124 (1912) ("[T]he exercise of [directors' powers] for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient."). When the rule applies to a board's business decision, a court will defer to the directors unless "no person of ordinary sound business judgment would say that the corporation received fair benefit." *Aronoff v. Albanese*, 85 A.D.2d 3, 446 N.Y.S.2d 368, 371 (2d Dep't 1982). In contrast, when circumstances remove a corporate decision from the scope of the rule, "the burden falls upon the board to demonstrate that its actions were reasonable and/or fair." *In re Croton River Club, Inc.*, 52 F.3d 41, 44 (2d Cir.1995).

■■ The business judgment rule will not protect a decision that was the product of fraud, self-dealing or bad faith. *Auerbach*, 47 N.Y.2d at 631, 419 N.Y.S.2d 920, 393 N.E.2d 994; *Freer v. Mayer*, 223 A.D.2d 667, 637 N.Y.S.2d 425, 426 (2d Dep't 1996); *Jones v. Surrey Coop. Apartments, Inc.*, 263 A.D.2d 33, 700 N.Y.S.2d 118, 121 (1st Dep't 1999). Directors may benefit from the rule "only if they possess a disinterested independence and do not stand in a dual relation which prevents an unprejudicial exercise of judgment." *Auerbach*, 47 N.Y.2d at 631, 419 N.Y.S.2d 920, 393 N.E.2d 994; *accord Croton River*, 52 F.3d at 44 ("It is black-letter, settled law that when a corporate director or officer has an interest in a decision, the business judgment rule does not apply."); *Lewis v. S.L. & E., Inc.*, 629 F.2d 764, 769 (2d Cir.1980) ("When a shareholder attacks a transaction in which the directors have an interest other than as directors of the corporation, the directors may not escape review of the merits of the transaction.").

---

**5.** This Court will give no weight to the documents not referenced in the Complaint (Martin Aff. Ex. F: Feb. 26, 1976 resolution of the RPO board; Martin Aff. Ex. O: Oct. 16, 2002 letter from Albo J. Antenucci, Jr. to Kramer), including those materials that relate only to the June 9th meeting (Reply Affidavit of Richard A. Martin, dated June 14, 2004 & Exs. S, T; Affidavit of Stuart K. Patrick, dated June 22, 2004 & Ex A). However, this Court finds that the remaining materials are suitable for consideration in connection with the present motion. (Martin Aff. Exs. A–E, G–N, P–R.)

Therefore, in an action seeking to hold a director liable, a court must first determine whether the business judgment rule applies. While the rule generally removes directors' decisions from court review, it "does not foreclose the courts from making an initial inquiry as to the status of those members of the board who are charged with misfeasance." *S.H. & Helen R. Scheuer Family Found., Inc. v. 61 Assocs.*, 179 A.D.2d 65, 582 N.Y.S.2d 662, 664 (1st Dep't 1992). On a motion to dismiss, "if plaintiff has made a prima facie showing of a lack of . . . disinterested independence . . . , the complaint may not be dismissed for failure to state a cause of action solely upon application of the business judgment rule." *Scheuer Family Found.*, 582 N.Y.S.2d at 664; *see Ackerman v. 305 East 40th Owners Corp.*, 189 A.D.2d 665, 592 N.Y.S.2d 365, 367 (1st Dep't 1993) ("Pre-discovery dismissal of pleadings in the name of the business judgment rule is inappropriate where those pleadings suggest that the directors did not act in good faith.").

### A. *Defendants' Interest in the Transactions*

A director is considered interested in a transaction if the director stands to receive "a direct financial benefit from the transaction which is different from the benefit to shareholders generally." *Marx v. Akers*, 88 N.Y.2d 189, 202, 644 N.Y.S.2d 121, 666 N.E.2d 1034 (1996); *see Aronson v. Lewis*, 473 A.2d 805, 812 (Del.1984) (holding that directors seeking the protection of the business judgment rule "can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally").

Plaintiff maintains that Defendants are interested parties with respect to RPO's transactions involving Deepdale and the Property because they stand to benefit personally in a manner other than as RPO shareholders. Plaintiff argues that, through their decisions to retain the Property and lease it to Deepdale at below-market rent, Defendants enjoy dramatically reduced dues and fees as Deepdale members. (Compl.¶¶ 4, 9.)

Defendants do not dispute that the longstanding relationship between RPO and Deepdale yields benefits for Deepdale members, including themselves. Nonetheless, they argue that a recent New York state court decision, *Shapiro v. Rockville Country Club, Inc.*, Index No. 15308–02, 2004 WL 398980 (N.Y.Sup.Ct. Feb.23, 2004), compels the conclusion that Defendants are disinterested and warrants the application of the business judgment rule.

Like this action, *Shapiro* involved a corporation that leased valuable property for minimal rent to a country club known as Rockville Links. Shareholders who were not members of Links brought a derivative suit against directors who were club members. *See Shapiro*, 2004 WL 398980, at *2–3, 784 N.Y.S.2d 924, ——. In granting the defendants' motion for summary judgment, the court held that the corporation's directors were disinterested with respect to the lease transactions despite being members of Links. *See Shapiro*, 2004 WL 398980, at *11, 784 N.Y.S.2d at ——. The court reasoned that the directors

> received the same benefit that is conferred upon all of those who are shareholders of [the corporation] and members of Links, reduced dues and fees. These same benefits were available and provided to those Plaintiffs who were previously members of Links and would be available to any of the Plaintiffs if they chose to become a member of Links.

*Shapiro*, 2004 WL 398980, at *11, 784 N.Y.S.2d at ——.

Critically, the *Shapiro* decision involved a motion for summary judgment, and so the court relied on evidence in the record in ruling for the defendants. Here, this Court's task with respect to Defendants' motion to dismiss is merely to assess the sufficiency of the Complaint. The focus is on the allegations in the Complaint and the documents incorporated therein. *See Cortec,* 949 F.2d at 47–48. Because the question "[w]hether a director is 'interested' or 'independent' is generally regarded as a question of fact," the issue does not lend itself to resolution on a motion to dismiss. *Drobbin v. Nicolet Instrument Corp.,* 631 F.Supp. 860, 880 (S.D.N.Y.1986).

■■■ Defendants argue that they are disinterested "because Deepdale membership is shared widely among RPO shareholders and is available to all." (Def. Reply Mem. at 6.) However, neither the Complaint nor the documents to which it refers suggest that membership in Deepdale was available to all RPO shareholders. *Cf. Shapiro,* 2004 WL 398980, at *11. To the contrary, the Complaint depicts Deepdale "as an extremely exclusive golf club" with only 250 members and a six-figure initiation fee. (Compl. ¶ 17.) The Complaint identifies ten members of Deepdale—all of them prominent figures in sports, entertainment, fashion, and finance. (Compl. ¶ 17.) Given these allegations, there is no reasonable basis to infer that membership is available to RPO's less affluent shareholders, such as the groundskeepers, bartenders and waitresses at Deepdale. (Compl. ¶ 25.)

Therefore, Plaintiff has sufficiently alleged that, because of Defendants' status as Deepdale members, they are not disinterested directors with respect to the transactions at issue. *See Lewis,* 629 F.2d at 770 (holding that directors of the lessor were interested because they were both directors and shareholders of the lessee); *Scheuer Family Found.,* 582 N.Y.S.2d at 664 ("[T]he allegations that each of the individual defendants participated in or had significant interest in 61 Associates ... are sufficient to plead precisely the type of dual interest and potential for self-interest which would create an exception to the shield provided by the business judgment rule."). As such, at this early stage of the proceedings, this Court cannot conclude that the business judgment rule protects Defendants' decisions concerning Deepdale and the Property.

### III.  *Sufficiency of the Claims*

Defendants argue that, even if the business judgment rule is inapplicable, Plaintiff fails to state a claim for breach of fiduciary duty or corporate waste.

### A.  *Breach of Fiduciary Duty*

The Complaint alleges that Defendants breached their fiduciary duties to RPO and its shareholders

> by failing to negotiate a lease for the Property at a market rental, by failing to allow the RPO [b]oard to negotiate in good faith for a possible sale of the Property and, in the case of [Defendants Allen and Kramer], for offering to purchase additional RPO shares so as to entrench their unlawful scheme and acquire such shares at an unfairly low price.

(Compl. ¶ 53; *see* Compl. ¶ 58.) This Court will treat the first two theories of Plaintiff's claim together.

### 1.  *Rental and Non–Sale of the Property*

■■■ Plaintiff claims that Defendants "breached their fiduciary duties of loyalty and due care by favoring Deepdale over RPO" and by their "continued failure to secure any net return to RPO from Deepdale or to give informed consideration to any other alternative." (Compl. ¶ 50.) The

duty of care requires a director to "perform his duties ... in good faith and with that degree of care which an ordinarily prudent person in like position would use under similar circumstances." N.Y. Bus. Corp. Law § 717(a). The duty of loyalty requires a director to subordinate his own personal interests to the interest of the corporation. *Hanson Trust*, 781 F.2d at 273; *Scheuer Family Found.*, 582 N.Y.S.2d at 665; *Limmer v. Medallion Group, Inc.*, 75 A.D.2d 299, 428 N.Y.S.2d 961, 963 (1st Dep't 1980).

Defendants argue that their refusal to demand a higher rent from Deepdale or sell the Property does not constitute a breach of fiduciary duty because the present arrangement has been in place for decades and is consistent with the purpose of RPO and its shareholders' desires. (Def. Mem. at 26.) However, the fact that RPO has leased the Property to Deepdale at a substantial market discount for nearly fifty years does not mean that continuing to do so is necessarily reasonable and fair to RPO's current shareholders. Indeed, the Complaint alleges that circumstances have changed dramatically since RPO's incorporation: RPO shareholders now include many more non-Deepdale members (Compl.¶¶ 3–4); the Property's value has increased exponentially (Compl.¶¶ 6, 28); and condemnation of the Property is a distinct possibility (Compl.¶ 42).

It would be inappropriate at this stage of the proceedings to determine the purpose of RPO or the will of its shareholders. The Complaint alleges that RPO's Certificate of Incorporation established the company "as a real estate business, real estate agency, and a real estate brokerage business." (Compl.¶ 16.) On the other hand, as Defendants emphasize, subsequent statements to shareholders and potential shareholders represented that RPO's "only business is to hold the property known as 'Deepdale Golf Club'" and that RPO would endeavor to reduce the rent paid by Deepdale as much as possible. (Martin Aff. Ex. C: 1976 Offering Circular, at 4–6.) At best, these statements are inconsistent regarding RPO's purpose. *Cf. Shapiro*, 2004 WL 398980, at *2 (noting that the certificate of incorporation manifested the corporation's purpose "to own construct and operate a golf course and other facilities related to a country club and to promote golf and other athletic interests"). Likewise, the Complaint alleges that the present shareholders are conflicted about what RPO's purpose should be. (Compl. ¶ 3 (alleging that some shareholders were told that "RPO shares would be a good investment, especially for retirement").)

█ Nor does the fact that the RPO board could not consummate a sale of the Property absent shareholder approval render that aspect of Plaintiff's claim without merit. The Complaint alleges only that Defendants failed to negotiate in good faith—not that they failed to effect a sale. To be sure, a decision to divest RPO of its only asset would require the approval of two-thirds of the corporation's shareholders, *see* N.Y. Bus. Corp. Law § 909(a)(3), but the board must itself approve the sale before formally submitting it to the shareholders, N.Y. Bus. Corp. Law § 909(a)(1). Accordingly, this Court concludes as a matter of law that the allegations in the Complaint state a claim for breach of fiduciary duty.

However, to the extent Plaintiff alleges that Defendants failed to negotiate in good faith for the sale of the Property, the Complaint is bereft of factual allegations, other than the allegations concerning the Bayswater Letter of Intent. (Compl.¶¶ 38–39.) This offer was made in March 2002 and rejected by Allen and Kramer on May 29, 2002. (Compl. ¶¶ 38–39; Martin Aff. Exs. B, M, N.) Because defendants Nathaniel Kramer, Hans Ker-

tess, Richard Rainwater and Dixon Boardman were not elected to the RPO board of directors until January 30, 2003 (Compl.¶ 7), the Complaint does not allege any facts that would support the conclusory allegation that they failed to negotiate a sale of the Property. *See Marx,* 644 N.Y.S.2d at 130, 666 N.E.2d 1034 (holding that "conclusory allegations do not state a cause of action" for director misconduct). To the extent Plaintiff's breach of fiduciary duty claims against defendants Nathaniel Kramer, Kertess, Rainwater and Boardman is premised on that allegation, Defendants' motion to dismiss is granted.

### 2. *Purchase of Additional RPO Shares*

The Complaint alleges that Allen and Kramer also breached their fiduciary duties to RPO and its shareholders when they offered to purchase additional RPO shares. (Compl.¶ 53.) The Complaint alleges that in connection with this offer Allen and Kramer failed to disclose information to RPO shareholders that, if known, would have increased the value of the stock. (Compl.¶ 42.)

A director breaches his fiduciary duty if he purchases company shares without disclosing non-public information that reflects on the value of the corporation. *See Diamond v. Oreamuno,* 29 A.D.2d 285, 287 N.Y.S.2d 300, 304 (1st Dep't 1968) ("Whatever the authority of . . . [cases holding] that a director owes no fiduciary duty to the corporation in his capacity as a holder of stock, they hardly support a thesis that he owes no such duty as a possessor of corporate inside information."); *Fischer v. Guar. Trust Co.,* 259 A.D. 176, 18 N.Y.S.2d 328, 332–33 (2d Dep't 1940). However, Plaintiff makes no allegation that Allen and Kramer's offer was successful and that any shareholder actually traded on their misrepresentations, or that RPO was otherwise harmed by the offer. *See Frydman & Co. v. Cred-*

*it Suisse First Boston Corp.,* 1 A.D.3d 274, 768 N.Y.S.2d 440, 441 (1st Dep't 2003) (alleged breach of fiduciary duty must proximately cause harm to the corporation); *see also Diamond,* 287 N.Y.S.2d at 305 (dismissing breach of fiduciary duty claims against directors because the complaint did not allege that they had participated in stock transactions). Mere attempts by a director to increase his stake in the company as a shareholder are not actionable as a breach of fiduciary duty. *Hauben v. Morris,* 255 A.D. 35, 5 N.Y.S.2d 721, 730 (1st Dep't 1938) ("Ordinarily a director may deal in securities of his corporation without subjecting himself to any liability to account for profits."). Plaintiff's allegation, even if true, does not constitute a breach of fiduciary duty, nor does Plaintiff point to any authority for upholding such a claim. Accordingly, to the extent it is premised on Allen and Kramer's July 2002 offer to purchase additional RPO shares, Plaintiff's claim for breach of fiduciary duty is dismissed.

### B. *Corporate Waste*

Lastly, Plaintiff claims that Defendants' actions in failing to negotiate a sale of the Property and leasing it to Deepdale at below-market rent constitutes corporate waste of RPO's lone asset. Plaintiff's claim of waste constitutes a cause of action separate from his breach of fiduciary duty claim. *See Hanson Trust,* 781 F.2d at 279 ("[A] prima facie showing of lack of due care is distinct from a prima facie showing of corporate waste, which may constitute a cause of action against directors separate and distinct from breach of the duty of loyalty or due care.") (citing *Ludlam v. Riverhead Bond & Mortgage Corp.,* 244 A.D. 113, 278 N.Y.S. 487 (2d Dep't 1935)).

"[T]he essence of waste is the diversion of corporate assets for improper or unnecessary purposes." *Aronoff,* 446

N.Y.S.2d at 370. Corporate waste occurs when assets are used in a manner "so far opposed to the true interests [of the corporation so] as to lead to the clear inference that no one thus acting could have been influenced by any honest desire to secure such interests." *Meredith,* 430 N.Y.S.2d at 385 (internal quotations omitted).

Defendants argue that the Complaint fails to state a claim for waste because RPO has always received significant consideration in the form of rent covering the Property's real estate taxes and liability insurance costs. (Def. Reply Mem. at 10.) Again urging this Court to follow *Shapiro,* Defendants emphasize that the New York court dismissed a claim of waste concerning a company's $7,200 per year lease of a $40 million property, *Shapiro,* 2004 WL 398980, at *2, whereas RPO currently collects $330,000 a year from Deepdale (Compl.¶ 27).

 Critical to its ruling, the *Shapiro* court found that the "lease permits the property to be used for the purposes for which it was intended and for which it has been used for more than 80 years as a private golf and country club in a cost effective manner without causing [the corporation] or its shareholders adverse tax consequences." *Shapiro,* 2004 WL 398980, at *12. Since *Shapiro* involved a motion for summary judgment, the court had evidence before it from which to discern the corporation's purpose. Here, neither the Complaint nor the documents incorporated therein dictate that the present use of the Property is consistent with the corporate purpose of RPO. Accordingly, Plaintiff has pled corporate waste sufficiently to survive Defendants' motion to dismiss.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. To the extent Plaintiff claims that Defendants Nathaniel Kramer, Hans Kertess, Richard Rainwater and Dixon Boardman breached their fiduciary duties by failing to negotiate for a sale of the Property, those claims are dismissed. Plaintiff's claims that Allen and Kramer breached their fiduciary duties by offering to purchase additional RPO shares are also dismissed. In all other respects, Defendants' motion is denied.