Thomas A. Aurelio, J.
The corporate and individual defendants, Dube, G-old, Stanfill and Santelli, move for an order authorizing the corporate defendants to pay the sums of $7,500 to each of the individual defendants and to the plaintiff, Joseph B. Ferguson, Sr., as a partial payment out of certain escrow funds. Plaintiff’s wife, who is also his receiver in sequestration, cross-moves for an order for payment out of the same escrow of moneys claimed to be payable to her as receiver. The issue here is whether warrant now exists for the payments.
The defendant corporations were formed as a result of an agreement made in June of 1955 among plaintiff and the individual defendants, by the terms of which plaintiff transferred certain assets, including real property, to the defendant corporations and ultimately received a total of approximately 97 % of the issued stock, all of it nonvoting. The individual defendants purchased enough voting stock to give them voting control of the corporate defendants. That agreement also created an “ experimental fund ” to be managed exclusively by the plaintiff solely for the purposes of experimentation. The fund requisitions 3% of the gross income of the defendant, Fergus *237 Imported Cars, Inc. Up to the time of the agreement, the plaintiff had conducted a foreign used car business under the name of Fergus Motors, Inc. Its gross volume for 1954 had been $600,000 and it had sustained losses in the period from 1951 to 1954 ranging from $10,181.82 to $39,547.48, the latter being the losses for the year 1954. When the new corporations were formed, the individual defendants started a new business of exclusive distributorships of foreign cars.
At the end of the first fiscal year, June 30, 1956, Fergus Imported Cars, Inc. grossed approximately $1,000,000. At the end of the second fiscal year, June 30, 1957, the gross rose to approximately $3,000,000 and from July 1, 1957 to April, 1958, it grossed approximately $4,000,000, with an indicated gross for the third fiscal year ending June 30, 1958 of approximately $5,000,000. The defendants assert that substantial profits have been made and that, aside from the sums of $88,219.35 and $6,889.25 paid into an escrow account for salaries, bonuses and dividends as a result of orders of the court heretofore made in this action, they have paid the sum of $209,401.83 into a socalled “ experimental fund ” set up under the agreement of June, 1955, only a small portion of which has been expended, and that these moneys have resulted from operations since the formation of the corporate defendants in June, 1955. In marked contrast with the foregoing, plaintiff’s company, Fergus Motors, Inc., as shown above, had sustained losses and by June, 1955, plaintiff had reached the age of 75, did not want to go on any longer and his business was practically closed down.
Plaintiff acknowledges that he is not an officer or director of the corporate defendants; that the individual defendants are the officers and directors and that he, the plaintiff, has nothing to do with the making of policy in either of the corporate defendants. Further, it clearly appears that the individual defendants have been in control of the corporate defendants and responsible for whatever success it has made. The issue between plaintiff and the defendants concerns his objection to the disposition of the earnings of the corporate defendants.
Apparently, under the agreement of June, 1955, the salaries of the individual defendants and of the plaintiff began at $140 per week. In 1956, the board of directors of Fergus Imported Cars, Inc. increased the salaries of the individual defendants and of the plaintiff to $300 per week. At the end of the second fiscal year, the board voted a bonus of $5,000 each to the plaintiff and the individual defendants, salary increases to $400 per week for plaintiff and each individual defendant and a dividend to the *238 parent corporation, Fergus Enterprises, Inc., which, in turn, voted a dividend to its stockholders of $6,889.25.
Plaintiff then brought this action to restrain alleged corporate waste. He sought to enjoin the same by an injunction motion, which was denied, except that the salary increases were ordered to be paid into escrow and to accumulate pending final determination of this action. When the later bonuses, salary increases and dividends were voted, he did not institute a new suit or supplement the pleadings in this action, but, instead, made a similar motion to restrain the payments of these amounts. This motion was denied with a similar escrow determination and a suggestion by the court that the issue might be raised by supplemental pleading.
There has accumulated in the escrow account, apart from the escrow dividends, salary increases totaling $88,219.35, of which the sum of $17,644.67 is allocated to each of the four moving individual defendants and to the plaintiff. It is out of this fund that the moving parties seek a partial payment.
It appears that the increase in the business of the corporate defendants has been due to the efforts of the moving individual defendants while each has been receiving $140 per week, and that plaintiff has also received $140 per week and has benefited from the increased net worth of the new operation and from the salary and bonus accruals, as contrasted with the situation in which he was when he made the agreement of June, 1955..
Plaintiff’s opposition is based chiefly upon a provision in the agreement of June, 1955 to the effect that “ salaries and bonuses will not be increased at any time in the future out of proportion to a fair return to all stockholders. ’ ’
Plaintiff infers that a substantial amount of income of the corporate defendants is derived not from services rendered by the individual defendants, but rather from three parcels of real estate transferred by him to the corporate defendants in exchange for the stock above referred to.
However, the relevance of this argument is not apparent since he does not renounce the June agreement, does not suggest that if his contention is correct, the income is not that of the corporate defendants, and does not deny the growth of the business of the corporate defendants and the individual defendants ’ responsibility therefor.
Whether plaintiff’s claim be for breach of contract, for corporate waste or for compulsory declaration of dividends and, regardless of the source of income or earnings, it is clear that the income and earnings are those of the corporate defendants *239 and were created under their management and that the functions which he seeks to control through the vehicle of the contract provision are those of the board of directors.
The “ business judgment ” rule is that stockholders may not question the judgment of directors who have the right to fix the compensation of executive officers for services rendered and to be rendered to the corporation, except when fraud is alleged or conduct so oppressive as to be its equivalent and facts are pleaded which afford a basis for such allegations (Kalmanash v. Smith, 291 N. Y. 142, 155; Bull & Co. v. Morris, 132 Misc. 509, 512, affd. 226 App. Div. 868).
A like rule pertains as to dividends. It is within the discretion of the directors to determine when and to what extent a dividend shall be made and the courts will not interfere with such discretion unless it be first made to appear that the directors have acted or are about to act in bad faith and for a dishonest purpose. In a proper case, of course, a court of equity will interfere, but facts must be presented from which the court can find that such action has underlying it a fraudulent purpose and corrupt intent (Liebman v. Auto Strop Co., 241 N. Y. 427).
While it does not appear that sufficient has been shown to warrant interference with the judgment of the board of directors, plaintiff contends nevertheless that nothing new has been presented to warrant a disposition different from the previous escrow directions. If this be the fact, then the motions should be denied. On the other hand, if new matter has been presented since the two previous escrow dispositions, or if satisfactory evidence has been offered that the grounds for the previous determinations of both motions have been frustrated or dissipated, then the motions should be granted.
Justice Behveítga denied the first motion for an injunction in January of 1957 and ordered the escrow structure. Defendants argue that the learned court conditioned the same on an early trial by ordering the case placed at the head of the Beady Day Calendar for February 4, 1957 and requiring the plaintiff to post a bond for only $250. Plaintiff apparently agrees with this view because, in his affidavit of April 14, 1958, submitted in opposition to these motions, he said: ‘ ‘ On the motion before Judge Benvenga in January 1957, the court stated that since the equity calendar was up to date, an early trial could be had, and for that reason it is evident he provided the escrow provision instead of an injunction, but the effect was the same.”
The case came on for trial before Justice Stbeit, but instead of an early trial, the same was deferred until the disposition of *240 the fraudulent conveyance action brought by plaintiff’s wife, to which further reference is made hereinafter.
The late Justice Dineen likewise denied the second motion for an injunction and added a similar escrow direction, together with a suggestion that the issues on the increases which were the subject of the second motion may be raised by supplemental pleading. Plaintiff apparently based his second motion relating to the new matter not alleged in the complaint on a species of “ consolidation ” of the issues on the motion with the issues raised by the pleading. Obviously, the court conditioned its direction on the service of a supplemental pleading, but despite the implicit cautionary note of the court, it does not appear anywhere in the papers that such a supplemental pleading has been served.
The late Judge Diíteen, at the time of the motion, also had for decision the fraudulent conveyance action referred to herein involving these parties, as well as the plaintiff’s wife, but no decision on the trial resulted, by reason of his untimely decease.
Defendants argue that the late Justice also conditioned the disposition of the motion on an early decision of the issues on that trial which, in turn, would have led to an early disposition of the issues in this case by virtue of Judge Stbeit’s direction, all of which was precluded and delayed by Justice Dineen’s untimely decease.
I am of the opinion that there is merit in defendants ’ analysis of the grounds of both decisions and in their contention that these grounds have been frustrated and therefore they are entitled to at least partial relief, but more persuasive than the foregoing are two other considerations, each of which occurred subsequent to both of the previous determinations and in my opinion constitute new matter warranting the granting of the motions.
First, in the absence of the service of a supplemental pleading complaining of the matters asserted in plaintiff’s second injunction motion, there cannot be any continuance of an escrow as to the amounts affected by the second motion. It is to be noted that the late Justice denied that part of the motion which sought to consolidate the issues on the motion with the pleading and cautioned the service of a supplemental pleading. The failure to do so requires the dissolution of this phase of the escrow involving the dividend, the bonuses totaling $25,000, and the salary increases from $300 to $400 per week for plaintiff and each individual defendant.
Secondly, of equal importance is the fact that plaintiff’s wife, who joined in plaintiff’s prayer for injunctive relief before *241 Justice Dineen, has now changed her position and prays this court, by cross motion, for release of the funds. As plaintiff’s receiver, she had supported plaintiff’s efforts to enjoin the second group of increases, but now, in reversing her position of opposition to the motion before the late Justice Dineen, she cites her poverty distress and a plan on her husband’s part to violate orders made in her matrimonial litigation with him, despite ability to comply with such orders, as evidenced by his being entitled to money accrued in escrow for his benefit exceeding $24,000. She alleges alimony arrears of $8,000 and weekly payments to her by plaintiff of a mere $37.50. She, too, is concerned about further delay resulting from the absence of a determination of the issues in both cases and whereas she suggests that conditions be attached to payments out of escrow, in the end she prays for a distribution out of the escrow funds.
The position of the wife in favor of part payment was not before either of the previous courts. It is a position asserted in this litigation by a person legally entitled to all of plaintiff’s stock. The requests by her for part payment comes at a time when the escrow fund amounts to in excess of $94,000, the “ experimental fund ” contains in excess of $200,000 and the gross annual business has increased to an indicated $5,000,000.
It is therefore clear that there are substantial reasons for the granting of the motions to the extent prayed for.
The motion made by the moving defendants is granted and the corporate defendants are authorized and permitted to pay out of the escrow funds in question $7,500 to each of the individual defendants, Peter Fritz Dube, Milton Gold, Guy M. Stan-fill and Louis Santelli, and to the plaintiff, Joseph B. Ferguson, Sr. The motion made by the wife as receiver as to the dividend amount to her husband’s credit in the escrow fund is likewise granted. The order to be settled hereon shall direct that there shall be paid to the plaintiff’s wife as receiver out of the dividend, salary and bonus amounts for plaintiff an amount equal to the accrued alimony arrears as at the time of the entry of the order.