Jones, J.
Plaintiff-appellant claims that the three defendant directors of Superior Engraving Co., Inc. violated their fiduciary duty to her when they sold shares of treasury stock to themselves and to two corporate employees without at the same time granting her the opportunity to purchase treasury shares on the same terms in proportion to her stockholding. We conclude that on this record questions of fact are raised which preclude granting plaintiff-appellant’s motion for summary judgment.
All of the outstanding stock of the corporation at one time had been owned in equal 50-share lots by Albert Smith, August A. Marien, and Girard Dietrich. Smith died in 1959 and his 50 shares were purchased by the corporation and thereafter held in treasury. Following Marien’s death in 1961 his 50 shares were held as follows: 26 by his widow, Clara, and 8 shares each by his sons Robert, Edward, and August, Jr. Just prior to the death of the third founder, Girard Dietrich, on March 15, 1968, there were four members of the board of directors — Dietrich, his daughter Margaret A. Schwartz, Robert Marien, and August Marien, Jr.
Following Dietrich’s death, on the admission of his will to probate, letters testamentary were issued to his daughter, here plaintiff-appellant.
August and Edward Marien gave notice of a special meeting of the board of directors to be held on May 6, 1968 to fill the vacancy on the board created by Dietrich’s death and to consider the purchase of the Dietrich stock and the sale of treasury stock. At the meeting, by the affirmative votes of Robert and August Marien, Edward Marien was elected to fill the Dietrich vacancy on the board. Thereupon after authorizing negotiations for the purchase of the Dietrich stock, with no word of explanation the three Marien directors voted to sell five shares of stock held in treasury, one share each to the three Marien brothers and one share apiece to two long-time corporate employees, Edward L. Kasprzak and Louis A. Zimmerman. *490 * Following such sales there were 105 corporate shares outstanding; 50 held by the Dietrich estate, 53 by the Marien family, and one each by the two corporate employees. Thus, corporate control was assured to the Marien family by a margin of one share even if both employee-stockholders were to join the Dietrich camp.
Following oral protest on the day after the special board meeting, plaintiff-appellant’s attorney wrote to the three Marien brothers on May 16 protesting the sales of the treasury stock as illegal and demanding that they be rescinded. This was followed on May 20 by a second letter containing plaintiff-appellant’s offer to purchase five shares of treasury stock at the same price at which the other five treasury shares had been sold. Pursuant to plaintiff-appellant’s demand a second special meeting of the board of directors was held on June 20 to act on her purchase offer. Although her attorney asserted plaintiff-appellant’s right to purchase five treasury shares to preserve her porportionate stock ownership in the corporation, the board rejected her offer. The only explanation then given for such rejection was that it was "not consistent” and not "in the best interests of the corporation” to sell more shares to the Dietrich estate at a time when the estate was negotiating to sell the shares it already held to the corporation. Plaintiff-appellant’s attorney asserted that failure to enable her to maintain her proportionate position would be a breach of the fiduciary responsibility owed by the directors. Plaintiff-appellant’s related request that the sales of the first five shares of treasury stock be rescinded was ruled out of order, and the meeting adjourned.
After her demands were ignored, plaintiff-appellant called a special meeting of the corporate shareholders to be held on July 25, 1968, for the election of directors. Thereafter, sensing the numerical predicament she was in, plaintiff-appellant instituted the present action alleging conspiracy and fraud on the part of defendants to deprive the Dietrich estate of its 50% stock ownership position and sought to enjoin the holding of the proposed meeting of shareholders. Her application for injunctive relief was denied and the meeting was held at which Edward Kasprzak was elected to replace plaintiff-appellant on the board of directors.
*491 Nothing had been said to plaintiff-appellant or her attorney prior to the special board meeting on May 6, 1968 of any sale of treasury stock to the Marien brothers or to the corporate employees. No explanation was offered at the May 6 meeting or at the later meeting on May 20. The only articulated basis for the refusal to sell five shares of treasury , stock to plaintiff-appellant was that it was inconsistent for her to purchase more shares when she was already negotiating for the sale of the shares she already held. This was an irrelevant rejoinder to her announced objective of regaining her 50% stock ownership position.
It was not until an examination before trial, three years after the sales of treasury stock to the corporate employees, that mention was first made of Mr. Kasprzak’s desire to purchase stock following Dietrich’s death and of Robert Marien’s purported apprehension that Kasprzak might leave the company’s employ. To his affidavit sworn to March 16, 1972, Edward Marien attached a copy of minutes of a special meeting of. stockholders and directors held on December 28, 1955 in which reference was made to a possible stock purchasing plan, concededly abandoned in 1959, in which two of the Marien brothers and Mr. Kasprzak were then listed as prospective beneficiaries.
Supreme Court denied cross motions for summary judgment, concluding that a trial must be held to resolve material issues of fact. The Appellate Division affirmed with one dissenting Justice disposed to grant summary judgment for plaintiff-appellant. We agree that there is sufficient evidence in this record to raise issues of fact, precluding summary judgment in plaintiff’s favor.
While it is conceded that pre-emptive rights as such do not attach to treasury stock in the absence of specific provision in the certificate of incorporation (Business Corporations Law, § 622, subd [e], par [4]), members of a corporate board of directors nevertheless, owe a fiduciary responsibility to the shareholders in general and to individual shareholders in particular to treat all shareholders fairly and evenly. (Hammer v Werner, 239 App Div 38; Dunn v Acme Auto & Garage Co., 168 Wis 128; Sheppard v Wilcox, 210 Cal App 2d 53; Drinker, The Pre-emptive Right of Shareholders to Subscribe to New Shares, 43 Harv L Rev 586, 603; Morawetz, Preemptive Right of Shareholders, 42 Harv L Rev 186, 188, 197; 11 Fletcher’s Cyclopedia Corporations [1971 rev ed], §§ 5135.1, *492 5136.2; cf. Kavanaugh v Kavanaugh Knitting Co., 226 NY 185.) "Apart from any preemptive or preferential rights which stockholders may have, they have additional rights with respect to the issuance of authorized but unissued stock and to shares which the corporation has acquired and carries in its treasury, which arise out of the fiduciary or trust relation which directors and officers sustain to stockholders, which imposes upon directors and officers as fiduciaries the duty not to use their position for their own personal advantage or for that of their confederates or to the detriment of stockholders. In other words, even where statutes or articles of incorporation have abolished the stockholders’ preemptive right there is still a fiduciary principle which protects the stockholders.” (11 Fletcher’s Cyclopedia Corporations, § 5135.1, p 173.)
Departure from precisely uniform treatment of stockholders may be justified, of course, where a bona fide business purpose indicates that the best interests of the corporation would be served by such departure. The burden of coming forward with proof of such justification shifts to the directors where, as here, a prima facie case of unequal stockholder treatment is made out. Particularly is this so when it appears that members of the board of directors favored themselves individually over the complaining shareholder. Additionally, disturbance of equality of stock ownership in a corporation closely held for several years by the members of two families calls for special justification in the corporate interest; not only must it be shown that it was sought to achieve a bona fide independent business objective, but as well that such objective could not have been accomplished substantially as effectively by other means which would not have disturbed proportionate stock ownership. Similarly, should the proof disclose double motivation on the part of the directors, that is, both to advance an independent corporate interest and at the same time to place a complaining shareholder at a disadvantage, the directors could then be absolved, if at all, of breach of fiduciary responsibilities only by accompanying proof that no other means were available appropriate to the accomplishment of the corporate objective.
There is evidence to support plaintiff-appellant’s contention that no independent corporate interest was served in the sale of the five shares of treasury stock to the Marien directors and the two long-time employees and that there was here only a *493 program to vest corporate control in the Marien family to the obvious disadvantage of the Dietrich family. On the other hand, there is also some evidence that prior to Dietrich’s death the directors had given consideration to an employee stock purchase plan, and it appears that Kasprzak and Zimmerman had each been corporate employees for 37 years and that August, Edward, and Robert Marien had been employed for 24, 22, and 19 years respectively.
Plaintiffs right to relief does not depend on proof of fraud or conspiracy on the part of the Marien members of the board of directors, although this is plaintiffs pleading. (Kavanaugh v Kavanaugh Knitting Co., 226 NY 185, 197, supra.) Rather, plaintiffs right of recovery depends on proof of breach of the fiduciary duty owed by the directors to plaintiff-appellant stockholder. This would follow, in the circumstances of this case, if it were found that the actions of defendants were not, in objective and accomplishment, in good faith furtherance of an independent, significant corporate purpose sufficient to override the obviously legitimate interest of plaintiff in retaining or regaining an equal 50% interest in the corporation and which purpose could not have been substantially accomplished by other means which would not have disturbed the equality of the two-family ownership.
Determinations as to whether the activities of defendants were undertaken in good faith for a legitimate corporate purpose and whether other means were available depend not only on an analysis of the objective facts but as well in part on an appraisal of defendants’ motives, involving as it will issues of credibility. "Good faith or bad faith as the guide or the test of fiduciary conduct is a state or condition of mind — a fact — which can be proved or judged only through evidence.” (Kavanaugh v Kavanaugh Knitting Co., supra, p 198.) Accordingly it is appropriate that this case go before triers of fact.
The order of the Appellate Division should be affirmed and the case proceed to trial.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, with costs. Question certified answered in the affirmative.

 These two employees were originally named party defendants but the action was subsequently dismissed on the merits as to each of them.