■ First Transcable Corporation, Appellant, v Avalon Pictures, Inc., et al., Defendants, and Avalon Investment Corporation et al., Respondents.—Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on February 11, 1991, which, *inter alia,* granted the cross-motion of defendants Isao Horikoshi and Avalon Investment Corporation, for partial summary judgment, dismissing the first cause of action, unanimously reversed, on the law, the motion is denied, the first cause of action is reinstated, and the application for expedited discovery is granted, with costs.

On this appeal, we reverse an award of partial summary judgment which dismissed the first cause of action alleging, *inter alia,* breach of fiduciary duty. The principal transaction at issue is the attempted issuance by the board of directors of a substantial block of new common stock in the defendant corporation, Avalon Pictures, Inc., in excess of the total num-

ber of shares authorized by the certificate of incorporation. Factual issues are presented involving the propriety of the actions of defendants taken in the name of Avalon Pictures, as well as the respective rights of the parties under the shareholders agreement, the settlement agreement, and the various loan agreements.

On this record summary judgment was clearly inappropriate. Factual issues are presented on plaintiff's cause of action for breach of fiduciary duty, and discovery should proceed. To put the issue in perspective, it is necessary to review the earlier agreements of the parties.

This action arises from a failed arrangement for venture financing of defendant Avalon Pictures, Inc., a New York corporation, with its principal place of business in California. Avalon Pictures is engaged in the business of providing pay-per-view cable television programming through a contract with GTE Spacenet.

In March 1989, the founders of Avalon Pictures issued a prospectus seeking $10 million to finance its proposed cable operations. Defendant-respondent Isao Horikoshi, who later became chairman and chief executive officer of Avalon Pictures, approached representatives of Daiichi America Real Estate, Inc., seeking financing pursuant to the prospectus. Daiichi America is a Delaware corporation. Its parent company is Daiichi Real Estate in Japan. Isao Horikoshi is also president of Ichikoshi Realty Ltd., a Japanese development company.

In August 1989, Daiichi America paid $100,000 for an 8% equity stake in Avalon Pictures. In December 1989, the principals entered into a structured financing arrangement whereby First Transcable Corporation, a Delaware subsidiary of Daiichi America, agreed to lend up to $7.5 million in scheduled advances to Horikoshi Corp., a U.S. subsidiary of Ichikoshi Realty, which would make corresponding advances to Avalon Pictures. As of December 1989, First Transcable held 36,697.37 shares of Avalon Pictures, representing 73.4% of the issued shares. The certificate of incorporation authorized a total issuance of 100,000 shares.

A shareholders agreement, dated December 22, 1989, provides that First Transcable is to have majority control of the five member board of directors for so long as it shall own more than 50% of the issued shares. It also contains anti-dilution provisions requiring the directors to offer any new shares to existing shareholders on a *pro rata* basis.

As of June 1990, Transcable had advanced $2.35 million to Horikoshi Corp., which then advanced the same amount to Avalon Pictures. Horikoshi Corp. was obligated to make regular monthly interest payments to Transcable. After the third alleged default as to timeliness of the interest payments, Transcable demanded that Horikoshi provide additional collateral security before the next scheduled advance on August 26, 1990. Transcable claimed to be exercising its alleged rights under the Horikoshi loan agreement.

By agreement dated August 26, 1990, Horikoshi and Daiichi terminated their loan agreement, and agreed that Horikoshi would repay the $2.35 million before December 22, 1993, and continue paying interest. It is disputed whether the parties further agreed that upon repayment of the $2.35 million, plus an additional $200,000, Transcable would transfer its stock in Avalon Pictures to Horikoshi or whether such transfer would be immediate. Horikoshi remained obligated to make the $800,000 payment to Avalon Pictures due on August 26th, but without any advance from Transcable. The termination of the loan arrangement is the subject of an action pending in California.

According to Transcable, Isao Horikoshi allegedly gave assurances that Horikoshi Corp. had sufficient working capital to keep Avalon Pictures in operation. Horikoshi denies giving such assurance and alleges that the settlement agreement provided for First Transcable's directors to resign immediately. It should be noted that the settlement agreement is in Japanese and, while the record contains a certified translation, its meaning and effect are contested.

On October 25, 1990, defendant Richard Blume sent a letter to the shareholders of Avalon Pictures informing them that Avalon Pictures intended to issue additional shares representing 73.4% of the company's stock to defendant-respondent Avalon Investment Corporation, a newly created corporation. The stated consideration for this issuance of stock was $200,000 and an agreement for Avalon Investment to lend money to Avalon Pictures. The letter set a deadline of November 5, 1990 for shareholders to exercise their right to purchase additional shares pursuant to the anti-dilution provisions of the shareholders agreement. It contained no details of the agreement with Avalon Investment other than the statement that it was formed by "our chairman of the board, Isao Horikoshi."

By letter dated November 3, 1990, Transcable objected to

the proposed issuance of additional shares. On November 5, 1990, Transcable demanded that Avalon Pictures call a special meeting of shareholders to elect a new board of directors. On November 8, 1990, Avalon Pictures sent a notice of a special meeting of the shareholders on November 12, for the purpose of electing a new board of directors and "such other business as may properly come before the board."

On November 6, 1990, as a result of a telephonic directors meeting, Avalon Pictures issued 49,900 shares, 49.9% of its authorized stock, to Avalon Investment Corporation. On November 13, 1990, after another telephonic directors meeting, Avalon Pictures called a shareholders meeting to approve the amendment of the certificate of incorporation to increase the number of authorized shares to 1,000,000, and authorized the commencement of litigation in California against Horikoshi, Daiichi America and First Transcable.

Plaintiff then commenced this action and sought injunctive relief. The Motion Court granted temporary injunctive relief but denied the motion for a preliminary injunction. The Motion Court also granted the cross-motion of defendants Avalon Investment Corporation and Isao Horikoshi to dismiss the complaint as against them. Only the first cause of action states claims against cross-movants. The court further held that the issues raised by First Transcable as to breach of the loan agreement are pending in the California action and would not be considered. The decision also states that the individual directors were acting for Avalon Pictures for a corporate purpose and therefore the first cause of action should be dismissed as against them.

We hold that the Motion Court applied erroneous legal standards in determining the motion and cross-motion. First, the court exceeded its role of issue identification on the summary judgment motion. Issues of fact are clearly presented. It was error for the court to find that First Transcable had waived its right to purchase additional shares *pro rata* in accordance with the terms of the anti-dilution provisions of the shareholders agreement because it did not respond within the short period set for exercise by Avalon Pictures' notice signed by defendant Richard Blume. The notice was deficient in several respects, including a lack of disclosure as to the terms of the proposed Avalon Investment Corporation loan agreement, and the specific details of the proposed new issuance. The notice failed to disclose that the new issuance would exceed the maximum number of shares authorized by the certificate of incorporation.

Factual questions are also presented as to the meaning and effect of the settlement agreement, executed in Japanese. While there is a certified translation in the record, its terms are not so clear as to support the Motion Court's construction that the parties intended immediate transfer of the stock held by First Transcable to Horikoshi. Plaintiff contends that the stock was not to be tendered under the agreement until the $2.35 million was repaid. It is entitled to a trial on this issue.

The Motion Court also applied an erroneous standard in assessing the legality of the conduct of the defendant directors. The court held that the first cause of action could be dismissed against the individual directors so long as they were acting for Avalon Pictures for "corporate purposes." This vastly understates the fiduciary duties of directors to afford shareholders fair, uniform and equal treatment. *(See, Schwartz v Marien,* 37 NY2d 487, 491; *Aronson v Crane,* 145 AD2d 455.) Under *Schwartz,* on this record, plaintiff has demonstrated *prima facie* unequal treatment, and the burden thus shifts to the defendant directors to justify the stock offering. This determination cannot be fairly made by summary judgment.

The unpublished decision and order of this Court entered herein on June 4, 1992 is hereby recalled and vacated. Concur —Murphy, P. J., Carro, Milonas and Ellerin, JJ.