OPINION OF THE COURT
Kenneth R. Fisher, J.
Plaintiffs, Wade Lippman and Suanne Lippman, individually and on behalf of Despatch Industries, Inc., formerly known as Brainerd Manufacturing Company, move pursuant to CPLR 3212 for an order granting them summary judgment on their third and fourth causes of action (the preferred dividend and breach of fiduciary duty claims, respectively), and for partial summary judgment on the first cause of action (the excessive compensation claim). Defendant, Despatch Industries, Inc., formerly known as Brainerd Manufacturing Company, cross-moves for summary judgment dismissing plaintiffs’ first, third, and fourth causes of action. These cross motions for summary judgment are just a few of the many motions made by the litigants in this and a related matter, Wade Lippman v Despatch Indus., Inc., Formerly Known as Brainerd Mfg. Co. (Index No. 2000-11429).
These cross motions for summary judgment relate to the following causes of action set forth in plaintiffs’ complaint:
First Cause of Action: seeking a judgment requiring defendants Shaffer and Lippman, jointly and severally, to pay damages to Despatch in an amount equal to the claimed excessive compensation received by Shaffer, plus interest, other relief, and attorneys’ fees.
Third Cause of Action: seeking judgment against defendants Shaffer and Lippman, jointly and severally, requiring them to repay to Despatch an amount equal to the preferred dividends claimed to have been improperly paid, plus interest, other relief, and attorneys’ fees.
Fourth Cause of Action: seeking judgment against defendants Shaffer and Lippman, jointly and severally, due to their claimed violation of their fiduciary duties to plaintiffs, causing a loss in value of plaintiffs’ shares in Despatch.
Plaintiffs’ second, third, and fourth causes of action were previously dismissed on summary judgment in June 2004. The order reflecting the court’s decision was appealed. Thereafter, based upon documents that were received during the discovery *707 process in the related litigation (Lippman v Despatch, Index No. 2000-11429), plaintiffs moved to renew their opposition to the previous motion for summary judgment. In July 2005, the court granted renewal and, upon renewal, denied defendants’ motion for summary judgment on plaintiffs’ third and fourth causes of action. The appeal of the June 2004 order was consequently discontinued as it was rendered moot.
Statement of Facts
Plaintiffs, minority common shareholders in this family business, seek to set aside various transactions they allege were conceived and implemented by defendants, who were self-interested officers, directors, and majority shareholders of Despatch. Plaintiffs contend that these transactions benefitted only defendants and were undertaken for no legitimate corporate purposes. Defendant James Lippman, father of plaintiff Wade Lippman, passed away in October 2005.
Despatch is a New York close corporation and a family-owned business that formerly manufactured cabinetry hardware products. The Lippman family first became involved in Despatch when Wade Lippman’s grandfather, Harry Lippman, purchased Despatch, then known as Brainerd Manufacturing Company. In 1998, Despatch ceased manufacturing operations. Presently, Despatch holds an investment portfolio and owns a parcel of real estate. As such, the company’s present primary activity is maintaining the investment portfolio and distributing income from the portfolio. After Despatch sold its operating assets and became an investment company, defendants allege that it became subject to being treated as a “personal holding company” under the Internal Revenue Code, a treatment that brings with it potential tax liabilities. To alleviate these concerns, defendants sought advice and assistance from an accountant, Robert Linder, and an attorney, Sherman Levey, Esq.
Wade Lippman became employed by Despatch upon his graduation from college in 1975. Wade Lippman’s brother-in-law, defendant Alan Shaffer (husband to Wade Lippman’s sister, Amy Shaffer), became employed at Despatch in 1982. In 1993, both Wade Lippman and Alan Shaffer entered into identical employment agreements and salary continuation agreements with Despatch.
In July 1999, following a disagreement with his father, James Lippman, over the settlement of litigation in federal court, Wade Lippman voluntarily resigned his employment with Despatch. *708 Following Wade Lippman’s resignation, Alan Shaffer continued on as Despatch’s sole remaining employee and president and continued to receive a salary from Despatch. Wade Lippman, of course, did not. Nevertheless, in August 1999, payments in the amount of $650,000 were approved and made by the Despatch board of directors to both Wade Lippman and Alan Shaffer. Likewise, in August 2000, both Wade Lippman and Alan Shaffer received another payment in the amount of $650,000. Tax returns filed by Despatch characterized these payments as “severance” payments. Alan Shaffer has testified that he did not understand his payment to be for severance, but rather to avoid tax liabilities for Despatch and to maintain the company policy of equal treatment for Wade Lippman and Alan Shaffer. (See Shaffer deposition transcript, Oct. 19, 2005, at 149, 151-157, 161.)
Before his death in 2005, James Lippman owned both common and preferred shares of stock. Since his death, those shares are owned by his widow, Phyllis. Over the years, both James and Harry Lippman gifted shares of common stock to Wade and Suanne Lippman, and their sons David and Jared, as well as Amy and Alan Shaffer, and their daughters Rebecca and Dana. Despatch also issued preferred shares of stock, all of which were acquired by James Lippman from his father Harry’s estate. Beginning in 2000 and continuing through 2005, James Lippman annually gifted shares of preferred stock to his four grandchildren and Amy Shaffer. Preferred stock was not gifted to Wade Lippman.
Wade Lippman commenced litigation relating to his employment agreement and salary continuation agreement in 2000: Lippman v Despatch, index No. 2000-11429. Following the commencement of that litigation, in. August 2001, Despatch did not make “severance” payments to Wade Lippman or Alan Shaffer. Accountant Robert Linder has testified at his deposition that it was understood that distributions were not to be made to Wade Lippman, pursuant to the wishes of James Lippman. (See affirmation of S. Cole, Esq., dated Aug. 15, 2006, exhibit E [deposition transcript of R. Linder], at 65-66.) Therefore, rather than make the “severance” payment in 2001, Despatch issued a preferred dividend to offset anticipated tax liability. Again, accountant Robert Linder has testified at his deposition that a preferred dividend, and not a common stock dividend, was paid out because James Lippman did not want distributions to be made to Wade Lippman. (Id.) In 2001, the preferred sharehold *709 ers consisted of James Lippman and his four grandchildren. In August 2002 another dividend distribution was made to preferred stockholders to offset alleged tax liabilities. At that time, the preferred stockholders consisted of James Lippman, the four grandchildren, and Amy Shaffer (Wade Lippman’s sister and Alan Shaffer’s wife). Wade and Suanne Lippman still were holders of only common stock, although it is undisputed that they cashed the dividend checks on behalf of their preferred shareholder children.
Plaintiffs commenced this action in 2003, and all discovery is complete.
Summary Judgment
It is well settled that “the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact.” (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986] [citations omitted]; see also Potter v Zimber, 309 AD2d 1276 [4th Dept 2003] [citations omitted].) “Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution.” (Giuffrida v Citibank Corp., 100 NY2d 72, 81 [2003], citing Alvarez, 68 NY2d at 324.) “Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers.” (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985] [citation omitted]; see also Hull v City of N. Tonawanda, 6 AD3d 1142, 1142-1143 [4th Dept 2004].) When deciding a summary judgment motion, the evidence must be viewed in the light most favorable to the nonmoving party. (See Russo v YMCA of Greater Buffalo, 12 AD3d 1089 [4th Dept 2004].) The court’s duty is to determine whether an issue of fact exists, not to resolve it. (See Barr v County of Albany, 50 NY2d 247 [1980]; Daliendo v Johnson, 147 AD2d 312, 317 [2d Dept 1989] [citations omitted].)
First Cause of Action (Shaffer’s Claimed Excessive Salary and the So-Called Severance Payments)
Plaintiffs seek partial summary judgment on that part of the first cause of action which alleges that Shaffer received improper cash distributions of $650,000 in each of the years 1999 and 2000. Plaintiffs also claim that Shaffer’s salary was excessive in the first cause of action, but do not seek summary judgment on *710 that issue. Defendants, however, seek summary judgment dismissing the entire first cause of action. Plaintiffs contend that they are entitled to summary judgment on this cause of action because the evidence establishes that the $1.3 million transferred to defendant Shaffer during 1999 and 2000, denominated the “severance” payments, was a self-interested transaction that served no legitimate corporate purpose and was not made pursuant to any valid obligation of the corporation. Identical payments also were made to Wade Lippman during those years. Plaintiffs ask only that the payments made to Shaffer be set aside. They maintain that, while the payments to Wade Lippman might justifiably be viewed as a partial or down payment on Despatch’s severance obligation to him under his employment agreement, and that the payments came to him with notations on the checks or in a cover letter announcing that they were “for services rendered” and a “down payment” with deductions made making clear that it was a severance payment (and so treated on the corporate tax returns), the corporation had no legitimate basis to treat Shaffer’s identical payments as severance, given his continued employment by Despatch, and there was no other contractual or other basis (such as consideration) supporting the distributions to Shaffer.
Defendants interpose the business judgment rule in support of the payments and submit an affidavit of their tax expert, who explained that the conversion of the company from manufacturing to a personal holding company required that distributions be made to avoid the personal holding company tax. They further contend that the showing contained in their expert’s affidavit is not rebutted by any corresponding expert evidence on behalf of plaintiffs and that Wade Lippman’s lay opinion on the subject is not admissible. Defendants further contend that plaintiffs acceptance of payments in equal amounts without objection estops them from their claims now.
The Business Judgment Rule Defense
In their memorandum (at 14) (the answer contained only a general denial and the affirmative defense of a failure to state a cause of action), defendants invoke the business judgment doctrine. Directors and majority shareholders of a corporation are “ ‘guardians of the corporate welfare.’ ” (Alpert v 28 Williams St. Corp., 63 NY2d 557, 568 [1984], quoting Leibert v Clapp, 13 NY2d 313, 317 [1963].) As such, they must undertake corporate action in good faith. (Alpert, 63 NY2d at 568.) Generally, the actions of directors and majority shareholders are protected by *711 the business judgment rule, which “bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.” (Auerbach v Bennett, 47 NY2d 619, 629 [1979]; see also, Patrick v Allen, 355 F Supp 2d 704, 710 [SD NY 2005].) As such, the business judgment rule prevents a court from second-guessing corporate decision making in the event the corporate decision was made in good faith and after reasonable investigation. (See Shapiro v Rockville Country Club, 2 Misc 3d 1002[A], 2004 NY Slip Op 50079[U], *10 [Sup Ct, Nassau County 2004].) A plaintiff may overcome the presumption of the business judgment rule, inter alia, by demonstrating that “no person of ordinary sound business judgment would say that the corporation received fair benefit.” (Aronoff v Albanese, 85 AD2d 3, 5 [2d Dept 1982].)
The business judgment rule will not protect interested directors in certain situations. The business judgment rule “bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.” (Auerbach v Bennett, 47 NY2d at 629.) However, “it constitutes no grant of general or inherent power in the directors to enforce ... an edict of the directors beyond their authority to make under either the bylaws of the corporation or, . . . the contract [s] between the corporation and . . . [its employees].” (Fe Bland v Two Trees Mgt. Co., 66 NY2d 556, 565 [1985].) Thus, the business judgment rule is not applicable to actions taken by a board in excess of its contractual authority. (40 W. 67th St. v Pullman, 100 NY2d 147, 157 n 8 [2003]; Ludwig v 25 Plaza Tenants Corp., 184 AD2d 623, 624-625 [2d Dept 1992].) Nor does it apply when the directors have an interest in the challenged transaction. “Directors are self-interested in a challenged transaction where they will receive a direct financial benefit from the transaction which is different from the benefit to shareholders generally.” (Marx v Akers, 88 NY2d 189, 202 [1996]; see also, Patrick, 355 F Supp 2d at 711.) Where such self-interest exists, the burden shifts to the self-interested director to demonstrate the “entire fairness” and reasonableness of the actions. (Alpert v 28 Williams St. Corp., 63 NY2d at 570 [invoking the “entire fairness” concept in an analogous setting]; Brigham v McCabe, 20 NY2d 525, 535 [1967] [same]; Chelrob, Inc. v Barrett, 293 NY 442, 461-462 [1944] [same]; see generally, Unitrin, Inc. v American Gen. Corp., 651 A2d 1361, 1371 n 7 [Del Sup Ct 1995] [collecting cases]; *712 Shapiro, 2 Misc 3d 1002[A], 2004 NY Slip Op 50079[U], *10.) While the issue as to whether a corporation benefits from an expenditure is a matter generally within the ambit of the business rule, the business judgment rule presumption will be overcome where “ ‘no person of ordinary sound business judgment would say that the corporation received fair benefit’ in exchange for the challenged expenditure.” (Stern v General Elec. Co., 837 F Supp 72, 76, quoting Aronoff v Albanese, 85 AD2d at 5.)
For the reasons that follow, plaintiffs are entitled to partial summary judgment on the first cause of action with respect to the 1999 and 2000 payments to Shaffer. The court’s first inquiry is whether the business judgment rule applies. (See Patrick, 355 F Supp 2d at 711.) Here, it does not. (See Marx v Akers, 88 NY2d at 204 n 6 [“directors who approve their own compensation bear the burden of proving that the transaction was fair to the corporation”].) “Like any other interested transaction, directoral self-compensation decisions lie outside the business judgment rule’s presumptive protection, so that, where properly challenged, the receipt of self-determined benefits is subject to an affirmative showing that the compensation arrangements are fair to the corporation.” (Telxon Corp. v Meyerson, 802 A2d 257, 265 [Del Sup Ct 2002]; see also, Walsh v Van Ameringen-Haebler, Inc., 257 NY 478 [1931]; Kreitner v Burgweger, 174 App Div 48, 52 [4th Dept 1916] [“It is in recognition of this status of directors that our courts have uniformly held that the attempt by directors in control of a corporation to contract for such corporation with themselves individually, to their benefit, and to the detriment of the corporation, is presumptively fraudulent and in bad faith” — involving directors who voted themselves an increase in compensation without a corresponding increase in duties].)
Plaintiffs have established that there was no contractual or other legitimate reason to give Shaffer the equivalent of the so-called severance payments made to Wade Lippman because the severance terms of the former’s employment contract covering such payments were not then triggered (of course, the same terms in Wade’s employment contract were arguably triggered— whether in fact they were remains disputed), and because, even accepting Linder’s tax strategy at face value, there was no reason to make naked cash distributions to only one director/ shareholder to the exclusion of others to achieve a tax avoidance objective. (40 W. 67th St. Corp. v Pullman, 100 NY2d at 157 n 8, citing Louis & Anne Abrons Found. v 29 E. 64th St. *713 Corp., 297 AD2d 258 [1st Dept 2002] [tenant raised genuine issues of material fact as to whether board acted in bad faith in imposing sublet fee meant solely to impact one tenant]; Schwartz v Marien, 37 NY2d 487, 492 [1975].[1] Defendants have failed to raise a question of fact as to whether there was an even arguable corresponding corporate obligation relating to the payments made to Shaffer, and have made no showing at all that the effectively disparate treatment of the payments was fair to the corporation’s shareholders. It is true that, for tax purposes, the corporation treated Shaffer’s payments in the same manner, i.e., as severance payments. But the board could not do that by sleight of hand, in contravention of the applicable employment agreements, without some other lawful authority permitting the same. (See Jacobson v Brooklyn Lbr. Co., 184 NY 152,162 [1906] [to justify the payments, the court would have to “f(ind) that the defendant corporation . . . promised to pay the defendants the salaries stated or that the defendants . . . rendered services of a value equal to the amount of such salaries”]; Schall v Althaus, 208 App Div 103, 106 [1st Dept 1924] [the “salaries of said defendants, having been fixed for the respective periods, they could not by their own votes donate to themselves the property of the corporation in the guise of additional compensation, but to which they had no possible legal claim. There appearing no agreement, express or implied, for such compensation, it amounted to no more than a gift of the corporate property and was wholly without consideration and void”]; cf., Fe Bland v Two Trees Mgt. Co., 66 NY2d at 565; Ludwig v 25 Plaza Tenants Corp., 184 AD2d at 624-625.) Accordingly, plaintiffs have met their burden to show that the business judgment rule does not apply.
Upon the court’s own examination of the record to discern whether an issue of fact exists on the entire fairness issue, recognizing that plaintiff’s success in showing director self-interest in these two transactions, while defeating the operation *714 of the business judgment rule, does not by itself establish director liability (Cinerama, Inc. v Technicolor, Inc., 663 A2d 1156, 1162-1163 [Del Sup Ct 1995] [“(b)urden shifting does not create per se liability on the part of the directors . . . Because the decision that the procedural presumption of the business judgment rule has been rebutted does not establish substantive liability under the entire fairness standard, such a ruling does not necessarily present an insurmountable obstacle for a board of directors to overcome”]), the court finds no evidence warranting a trial. (Hakim v Mahdavian, 185 AD2d 428, 429-430 [3d Dept 1992] [granting summary judgment on an analogous record].)[2] The court has reviewed the voluminous deposition transcripts submitted by the parties. Shaffer’s own deposition testimony revealed the following: defendant Shaffer was a director at the time of the 1999 and 2000 payments (see Shaffer deposition transcript, Oct. 19, 2005, at 12); the 1999 and 2000 payments to himself were conceded not to be made pursuant to a valid agreement or in satisfaction of a legitimate corporate obligation (see id. at 35, 45, 150, 152); Shaffer wrote the 1999 and 2000 checks to himself on behalf of Despatch (see id. at 142-144, 152). Shaffer states in his deposition that, although the 1999 and 2000 payments to himself and plaintiff were characterized as severance payments on the Despatch tax returns, he never understood his payment as being in the nature of a severance payment. (See id. at 151-157.) Rather, Shaffer testified that he paid himself the 1999 and 2000 payments on behalf of Despatch “to reduce our tax liability” (id. at 149, 161), because Despatch is a family business and they “shared equally” (id.), and because the payments were being made to plaintiff “to come to some accord” with respect to the agreements and the issues that arose when plaintiff left his employ at Despatch. (Id.) Shaffer further stated at the deposition: “They knew I had the same agreements that Wade had [and] that eventually they would have to come to some accord with me as well. This was an attempt to start reaching some accord with our agreements.” This is the only “reasoning” proffered by defendants and it cannot, without more that is not present here, warrant a trial. “To avoid substantive liability, notwithstanding the quantum of adverse *715 evidence that has defeated the business judgment rule’s protective procedural presumption, the board will have to demonstrate entire fairness by presenting evidence of the cumulative manner by which it otherwise discharged all of its fiduciary duties.” (Cinerama, Inc. v Technicolor, Inc., 663 A2d at 1163.) Defendants here posit the tax strategy rationale, but wholly fail to address the disparate treatment of the distributions required by the terms of the governing employment/salary continuation agreements (notwithstanding their treatment on the books of the corporation and in their tax returns), and thus fail to raise an issue of fact warranting a trial. (663 A2d at 1163 n 8 [even though rebutting the presumption successfully does not result in per se liability, “ ‘(b)ecause the effect of the proper invocation of the business judgment rule is so powerful and the standard of entire fairness so exacting, the determination of the appropriate standard of judicial review frequently is determinative of the outcome of (the) litigation’ ”], quoting Mills Acquisition Co. v Macmillan, Inc., 559 A2d 1261, 1279 [Del Sup Ct 1989], quoting AC Acquisitions Corp. v Anderson, Clayton & Co., 519 A2d 103, 111 [Del Ct Ch 1986].)
The difficulty in defendants’ position lies in the undisputed fact that no events had transpired to trigger any severance payments to defendant Shaffer under the governing agreements. (See Shaffer deposition transcript, Oct. 19, 2005, at 150.) Consequently, while it must be assumed for purposes of this motion that plaintiff received payments in 1999 and 2000 appropriately referable to the severance provisions of his agreements with Despatch (as also evidenced by Despatch’s characterization of the payments as such on their tax returns), Shaffer received equal so-called “severance” payments despite his continued employment at Despatch and with no corresponding or other contractual obligation of Despatch at play.[3] As such, defendant Shaffer received a “direct financial benefit from the *716 transaction which is different from the benefit to” plaintiff. (Marx v Akers, 88 NY2d at 202.) As noted above, in such a circumstance, the burden shifts to the director to establish fairness and reasonableness in the actions. The evidence before the court does not satisfy this burden. Shaffer admits in his deposition that the payments were made for no consideration and that there was not a corresponding obligation to make the payments. Rather, Shaffer states the following rationale for the 1999 and 2000 payments: “Whatever Wade got, I would get. Whatever I got, Wade would get.” (Shaffer deposition transcript, Oct. 19, 2005, at 149.) Inasmuch as severance payments were contractually due to Wade, but not to Shaffer, Shaffer’s payments may only be described as a gift of corporate assets (Schall v Althaus, 208 App Div at 106 [quoted above]), and therefore he “got” more than “Wade . . . got,” to the tune of $1.3 million. The tax avoidance rationale does not show why such disparate treatment was “entirely fair,” nor do defendants present evidence that the corporation, by written or other enforceable agreement that the court cannot now imagine, charged or could charge the distribution to Shaffer’s ultimate severance entitlement upon his retirement or upon dissolution, and why a payment in advance of those events was otherwise justified as fair or reasonable. (Schwartz v Marien, 37 NY2d at 492.)[4]
*717 Plaintiffs’ motion for partial summary judgment is granted on the first cause of action with respect to the 1999 and 2000 payments. Defendants’ cross motion for summary judgment dismissing the first cause of action, insofar as it concerns the two $650,000 payments to Shaffer, is denied. The moneys paid to Shaffer in 1999 and 2000 must be returned to the corporation. (See Gerdes v Reynolds, 281 NY 180, 185 [1939] [when defendants “voted themselves” excessive compensation, “directors must restore to the corporation the moneys which they had no right to take from its treasury”].)[5]
Annual Salary Paid to Shaffer
Defendants also seek summary judgment on the issue of the annual salary paid to Shaffer. Plaintiffs have not sought summary judgment on this issue, stating that issues of fact preclude judgment.
*718 “The ‘business judgment rule’ is that stockholders may not question the judgment of directors who have the right to fix the compensation of executive officers for services rendered and to be rendered to the corporation, except when fraud is alleged or conduct so oppressive as to be its equivalent and facts are pleaded which afford a basis for such allegations.” (Ferguson v Fergus Enters., 13 Misc 2d 235, 239 [Sup Ct, NY County 1958], citing Kalmanash v Smith, 291 NY 142, 155 [1943]; see also, Mautner v Hirsch, 1992 WL 106318, *6, 1992 US Dist LEXIS 6272, *17 [SD NY 1992] [stating “the business judgment rule precludes a stockholder from challenging the amount of the compensation in the absence of bad faith . . . While it is true that when the compensation is so high as to raise an inference of bad faith the business judgment rule will not apply, a mere difference of opinion as to whether an officer’s salary is unnecessarily high will not give rise to an inference of bad faith”]; Garbarino v Utica Uniform Co., Inc., 269 App Div 622, 626-627 [4th Dept 1945], affd 295 NY 794 [1946].)
Here, even if it could be said that the business judgment rule applies (but see above), defendants, establish as a matter of law that the salary paid to Shaffer was in accord with his employment agreement, and plaintiffs have failed to raise a question of fact as to the existence of fraud or oppressive conduct. The salary paid to defendant Shaffer was considerably less than paid to Wade Lippman before he retired. (See affirmation of J. Metzler, Esq. 1Í1Í 46, 49.) There is no evidence of bad faith in the payment of Shaffer’s salary. Moreover, Shaffer’s employment agreement, akin to Wade Lippman’s, states the following:
“As compensation for the performance of his duties, the Company shall pay to Employee a salary in the amount fixed from time to time by the Board of Directors of the Company and such bonuses and other compensation as the Board of Directors may from time to time determine to award; provided, however, that the total salary, bonuses and other compensation paid to Employee in any fiscal year shall at least equal such salary, bonuses and other compensation paid to Employee during the Company’s then most recently completed fiscal year.”
Contrary to engaging in fraudulent or oppressive conduct, defendants acted in line with the employment agreement and *719 consistent with the payment scheme used when Wade Lippman was employed at Despatch. Defendants’ motion for summary judgment on the first cause of action is granted in part as to defendant Shaffer’s salary.
Third Cause of Action
Both parties have moved for summary judgment on the third cause of action, which alleges that preferred dividends were improperly paid. The applicability of the business judgment rule is defeated, “and judicial inquiry thereby triggered ... by a showing that a breach of a fiduciary duty occurred, which includes bad faith, self-dealing, or by decisions made by directors demonstrably affected by inherent conflicts of interest.” (Higgins v New York Stock Exch., Inc., 10 Misc 3d 257, 278 [citations omitted].) Where such a showing is made by the party contesting the applicability of the business judgment rule, the burden to prove the fairness of the transaction then shifts. (See discussion above.)
Here, even assuming that self-interest was not involved because Shaffer did not receive any dividends but instead his children did, a dubious proposition at best (James also held preferred shares and authorized the distributions as director), the defendants’ actions in issuing the preferred dividends were not taken in good faith. Rather, the record shows that dividends were issued on preferred shares, instead of common shares, for the explicit purpose of ensuring that a distribution not be made to plaintiff Wade Lippman, a common shareholder. (See affirmation of S. Cole, Esq., Aug. 15, 2006, exhibit E [deposition transcript of R. Linder], at 65-66.) Likewise, the evidence shows that the same tax benefit would have been achieved through the issuance of common stock dividends (Schwartz v Marien, 37 NY2d at 492 [discussed supra at 716 n 4]), and that preferred stock dividends were issued only after James Lippman acquired the preferred shares and Wade Lippman commenced litigation relating to his employment agreements. Furthermore, the certificate of incorporation stated that no preference was to be given to preferred shares when issuing dividends. (Affirmation of S. Cole, Esq., Aug. 15, 2006, exhibit E [deposition transcript of R. Linder], at 13, 50, 54, 63; affidavit of Wade Lippman, Aug. 15, 2006, exhibit B.) As such, there is sufficient evidence in the record before the court to conclude that the decision to issue dividends to preferred shares over common shares was made in bad faith. As such, the court can look into the propriety of the preferred dividend transaction.
*720 Defendants then hear the burden of establishing the fairness of that decision. (Schwartz v Marien, 37 NY2d at 492.) The following has been stated with respect to the duty of loyalty:
“Officers and directors of a corporation owe to it their undivided and unqualified loyalty. . . . They should never be permitted to profit personally at the expense of the corporation. Nor must they allow their private interests to conflict with the corporate interests. These are elementary rules of equity and business morality.” (Foley v D’Agostino, 21 AD2d 60, 66-67 [1st Dept 1964] [internal quotation marks omitted], quoting Lyon v Holton, 167 Misc 585, 587 [Sup Ct, NY County 1938].)
At the outset the court notes that there is no indication that the payment of dividends was not a legitimate technique to employ given the tax issues facing Despatch. However, accountant Robert Linder in his deposition testimony stated that the legitimate tax purpose of paying out dividends could have been achieved through payment of either common shares or preferred shares. (See affirmation of S. Cole, Esq., Aug. 15, 2006, exhibit E, at 13.) Therefore, although payment of dividends served a legitimate purpose overall, the decision to pay dividends to preferred shareholders over common shareholders for the explicit purpose of preventing Wade Lippman from receiving any distribution was not fair, legitimate, or the exercise of good faith. (Schwartz v Marien, 37 NY2d at 492.) This conclusion is buttressed by the certificate of incorporation, which specifically states that preferred shares will not have a preference as to the issuance of dividends. In short, while the overall premise of avoiding tax liability was proper, issuance of dividends to preferred shareholders only was contrary to the certificate and otherwise inherently unfair because the issuance was rooted in James Lippman’s desire to ensure that no distributions were made to Wade Lippman. The record is clear that preferred shareholders received the dividend over common shareholders for the express purpose of avoiding a distribution to Wade Lippman. As such, the issuance was unfair and improper. (Carr v Kimball, 153 App Div 825, 834 [1912] [“Instead of treating all the stock alike and distributing the profits fairly and proportionately by way of dividends, the majority first elect themselves directors, then as directors elect themselves officers, and then distribute among themselves a substantial part of the profits in the way of excessive salaries, additional compensation and other devices”], quoted in Schall v Althaus, 208 App Div at 105.)
*721 Plaintiffs’ motion for summary judgment on the third cause of action is granted. Defendants’ cross motion for summary judgment on the third cause of action is denied.
Fourth Cause of Action
Both parties have also moved for summary judgment on the fourth cause of action, which alleges breach of fiduciary duties by defendants Shaffer and Lippman in connection with the issuance of the preferred share dividends, which allegedly caused a loss in value of plaintiffs’ shares in Despatch. For the reason stated above, plaintiffs’ motion for summary judgment is granted on the fourth cause of action. Defendants’ cross motion for summary judgment on the fourth cause of action is denied.

. Wherein it was stated:
“Departure from precisely uniform treatment of stockholders may be justified, of course, where a bona fide business purpose indicates that the best interests of the corporation would be served by such departure. The burden of coming forward with proof of such justification shifts to the directors where, as here, a prima facie case of unequal stockholder treatment is made out. Particularly is this so when it appears that members of the board of directors favored themselves individually over the complaining shareholder.” (Schwartz v Marien, 37 NY2d at 492.)

. Nor does the foregoing mean that directors cannot set the terms of their compensation. By the nature of corporate governance, they must. (Business Corporation Law § 713 [e].) But the discussion in the text, above, does mean that defendants “bore the burden of proof.” (Garbarino v Utica Uniform Co., Inc., 269 App Div 622, 627 [4th Dept 1945], affd 295 NY 794 [1946]; see Marx v Akers, 88 NY2d at 203-204 n 6.)

. In litigation of motions previously brought by the parties and in appeals, defendants have disputed whether Wade is entitled to severance payments under the circumstances, but neither- party has put that issue before the court on these motions, which focus only on the payments to Shaffer, and therefore the propriety of the board’s treatment of the payments to Wade as in the nature of severance is not currently before the court for resolution. In other words, in the absence of a challenge by defendants on these cross motions to the board’s treatment of Wade’s payments, the court has no occasion to second-guess the board’s decision to pay Wade a part of his severance entitlement. For now, the only salient point is that the board treated both sets of payments as part payment of severance when it could not possibly have done so in the case of Shaffer. Whether Wade’s payments were appropriately *716 referable to the severance obligation in his agreements with Despatch, or also a gift of corporate assets, as Shaffer’s payments unquestionably were, is a matter that, if raised by the pleadings, is yet to be resolved. Nor, even, does it matter to the decision whether Shaffer’s payments were a gift, how the board treated Wade’s payments, or how it should have treated them, or whether they should have been made at all. The point is that Shaffer’s payments were not referable to any of his contracts with Despatch, nor to any other legitimate obligation or liability incurred by the corporation.

. What was required in response to plaintiffs motion showing unequal treatment of stockholders was fairly articulated as follows:
“not only must it be shown that it was sought to achieve a bona fide independent business objective, but as well that such objective could not have been accomplished substantially as effectively by other means which would not have disturbed proportionate [treatment of stockholders]. Similarly, should the proof disclose double motivation on the part of the directors, that is, both to advance an independent corporate interest and at the same time to place a complaining shareholder at a disadvantage, the directors could then be absolved, if at all, of breach of fiduciary responsibilities only by accompanying proof that no other means were available appropriate to the accomplishment of the corporate objective.” (Schwartz v Marien, 37 NY2d at 492 [emphasis supplied].)
*717 Thus, defendants were required at least to address in their responding papers, not simply whether cash distributions were necessary to avoid tax liability, but why it served the tax avoidance purpose to allow Shaffer to obtain cash distributions not tied to any corporate obligation, and yet insist that Wade’s distribution be charged to his severance account. Defendants’ responding papers wholly fail on the latter issue, and accordingly fail to raise an issue of fact whether “no other means were available appropriate to the accomplishment of the corporate objective.” (Id.)

. Defendants’ estoppel argument, not pleaded as an affirmative defense, is without merit in any event. Wade Lippman accepted payments as partial credit toward his severance entitlement under the applicable agreements, not disparate treatment of him by the board, after he resigned from the company, in the guise of equal payments or distributions of cash, whether or not he knew of such payments to Shaffer. The suggestion that Wade participated in such disparate treatment by accepting payments to which he was entitled under the severance provisions (defendants do not dispute the severance obligation or that the amounts paid to Wade are appropriately referable to the severance obligation) is preposterous. Shaffer received a gift; Wade received only a part of what he was entitled to under the agreements. Those facts do not make out an estoppel.
Nor may defendants avail themselves of the doctrine of ratification by their citation to Blake v Blake (225 AD2d 337 [1st Dept 1996]). As shown by the resolution concerning the preferred stock dividend (see infra), there were only two directors, James Lippman and Shaffer. Shaffer’s deposition testimony revealed an informal corporate governance relating to the salary and the severance matters, with board meetings occurring by happenstance whenever he, James, Linder and Sherman Levey convened on the telephone or got together. No resolution of the hoard is referred to in connection with the so-called severance distributions, nor does it appear that the requirements of Business Corporation Law § 713 (a) were adhered to, either by virtue of board action alone or by shareholder ratification. Accordingly, the presumption of waste remains for this case. (See generally, Cohen v Ayers, 596 F2d 733, 741 [7th Cir 1979] [applying New York law], cited with approval in Aronoff v Albanese, 85 AD2d at 5-6.)